HORSEHEAD RESOURCE DEVELOPMENT COMPANY, INC., Petitioner-Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

First District (5th Division)    No. 1—96—2571

Opinion filed August 15, 1997.—Rehearing denied September 16, 1997.

Much, Shelist, Freed, Denenberg, Ament, Bell & Rubenstein, of Chicago

(John Van Vranken, of counsel), and Akin, Gump, Strauss, Hauer & Feld, L.L.P., of Washington, D.C., for petitioner.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Daniel N. Malato, Assistant Attorney General, of counsel), for respondent Pollution Control Board.

JUSTICE HOFFMAN delivered the opinion of the court:

The petitioner, Horsehead Resource Development Company, Inc. (Horsehead), filed this appeal for review of an Illinois Pollution Control Board (Board) decision adopting a federal hazardous waste delisting of electric arc furnace dust (EAFD) treated by respondent Conversion Systems, Inc. (CSI). On appeal, Horsehead claims that the Board exceeded its statutory authority under the Illinois Environmental Protection Act (Act) by promulgating the delisting through the identical-in-substance procedure under section 7.2(a) of the Act (415 ILCS 5/7.2(a) (West 1994)). We affirm.

This administrative review action concerns methods for treating EAFD, an emission from the primary production of steel in electric arc furnaces. Horsehead petitions for review of the Board's decision to exclude from hazardous waste regulation the EAFD that is generated and treated by the "Super Detox" process at CSI's plant in Sterling, Illinois.

The federal Resource Conservation and Recovery Act of 1976 (RCRA) (42 U.S.C. § 6901 *et seq.* (1994)) is the foundation for regulation of hazardous waste in the United States and provides a comprehensive regulatory structure to manage such wastes. The United States Environmental Protection Agency (USEPA) is responsible for identifying hazardous wastes, and the RCRA provisions regulate the generation, treatment, storage, and disposal of such wastes.

Until 1991, EAFD was listed hazardous waste No. K061—"emission control dust-sludge from the primary production of steel in electric furnaces." Listed hazardous wastes are those that the USEPA deems to be hazardous as a class, and "listing" a waste is a regulatory determination that the substance will be placed on the USEPA list of hazardous wastes. 42 U.S.C. § 6921 (1994). Conversely, "delisting" a waste is an exclusion from hazardous waste control after the USEPA makes a determination that, under specific conditions, a particular waste previously listed as hazardous should no longer be considered hazardous. 42 U.S.C. § 6921(s) (1994). As a listed waste, EAFD was subject to RCRA land disposal restrictions for hazardous wastes, including stringent regulatory and recordkeeping require-

ments. These restrictions render hazardous waste disposal much more costly than nonhazardous waste disposal.

Section 6926 of RCRA allows the USEPA to authorize qualified states to implement a hazardous waste program within the state in lieu of the federal program. 42 U.S.C. § 6926(b) (1994). Accordingly, such states are authorized to make their own delisting decisions. The USEPA authorized Illinois' hazardous waste management program in 1986. See 51 Fed. Reg. 3778 (January 30, 1986). As an authorized state, Illinois may operate a more stringent RCRA program than the federal program or it may adopt federal delistings and remain in "lockstep" with the USEPA, but it may not operate a program less stringent than the federal program without jeopardizing its RCRA authorization. See 42 U.S.C. §§ 6926(e), 6929 (1994).

Illinois' implementing authority for RCRA is the Act (415 ILCS 5/1 et seq. (West 1994)), which authorizes the Illinois Environmental Protection Agency (IEPA) to enforce the state's hazardous waste management program requirements. The responsibility for developing and promulgating environmental regulations in Illinois rests with the Board. 415 ILCS 5/5 (West 1994).

In 1991, the USEPA excluded from listed hazardous waste any EAFD treated by the high temperature metals recovery process used by Horsehead. EAFD treated by CSI's "Super Detox" process was not delisted in the USEPA's decision. Since EAFD treated by Horsehead could thereafter be transported and disposed of at a considerably lower cost, Horsehead enjoyed a competitive advantage.

In 1993, CSI pursued USEPA approval for the delisting of EAFD treated by its "Super Detox" process. CSI submitted information on the process and included testing data. After considering the written data and public comments received from numerous sources, including Horsehead, the USEPA delisted EAFD treated by CSI's process. 60 Fed. Reg. 31107 (June 13, 1995). Accordingly, EAFD treated by this process was no longer considered hazardous waste as long as it met the USEPA delisting criteria, which include certain testing requirements and disposal in licensed RCRA landfills.

Horsehead appealed the USEPA's decision to the Court of Appeals for the District of Columbia. *Horsehead Resource Development Co. v. USEPA*, No. 95—1286 (D.C. Cir. June 1, 1995). At the time that CSI filed its appellate brief, the federal appellate court apparently was considering jurisdictional motions challenging Horsehead's standing to appeal.

Since EAFD treated by CSI's "Super Detox" process continued to be regulated as a hazardous waste under Illinois law, CSI then requested that the Board adopt the USEPA delisting. In February

1996, the Board issued a proposed opinion adopting the federal delisting. *Pollution Control Board Notice of Proposed Amendments*, 20 Ill. Reg. 2651 (February 16, 1996). In considering this issue, the Board implemented an expedited process called an "identical-in-substance" procedure, the authority for which is contained in section 7.2 of the Act:

> "(a) In the context of a mandate that the Board adopt regulations to secure federal authorization for a program, regulations that are 'identical in substance' means State regulations which require the same actions with respect to protection of the environment, by the same group of affected persons, as would federal regulations if USEPA administered the subject program in Illinois. After consideration of comments from the USEPA, the Agency, the Attorney General and the public, the Board shall adopt the verbatim text of such USEPA regulations as are necessary and appropriate for authorization of the program." 415 ILCS 5/7.2 (West 1994).

The Board also relied upon section 22.4 of the Act, which provides:

> "(a) In accordance with Section 7.2, the Board shall adopt regulations which are identical in substance to federal regulations or amendments thereto promulgated by the Administrator of the United States Environmental Protection Agency to implement Sections 3001, 3002, 3003, 3004, and 3005, of the [RCRA] ***." 415 ILCS 5/22.4(a) (West 1994).

The Board published the proposed regulations in the Illinois Register and held the docket open for 45 days after the date of publication to receive public comment. Horsehead filed comments in opposition to the proposed delisting which argued that the Board did not have the authority to promulgate the delisting through the identical-in-substance procedure and that the proposed delisting violated state and federal statutory mandates prioritizing recycling and resource recovery over conventional treatment and disposal. Horsehead also challenged the proposed delisting on scientific and technical grounds and urged the Board to consider the broader environmental impacts of its proposal.

On June 20, 1996, the Board issued its final opinion and order adopting the federal delisting of EAFD treated by CSI's process. *In re RCRA Update, USEPA Regulations*, Ill. Pollution Control Bd. No. R95—20 (June 20, 1996). The Board noted that its implementation of the identical-in-substance procedure did not allow it to revisit the merits of a delisting since the USEPA theoretically had reviewed all the merits in its previous decision. See 415 ILCS 5/7.2(a) (West 1994). Therefore, the Board eschewed its own substantive review and substantially adopted the USEPA's opinion. Horsehead filed a timely appeal.

Horsehead contends that the Board exceeded its statutory authority in adopting the federal K061 delisting through the identical-in-substance procedure. Horsehead argues that the Board was required to follow the adjusted standard procedure under section 28.1 of the Act, which provides that "[a]fter adopting a regulation of general applicability, the Board may grant, in a subsequent adjudicatory determination, an adjusted standard for persons who can justify such an adjustment." 415 ILCS 5/28.1(a) (West 1994). A regulation of "general applicability" is the general classification of a waste as hazardous, such as EAFD previously listed as hazardous waste K061. Thus, an adjusted standard would be a delisting for such a waste from a particular facility. Horsehead emphasizes that the adjusted standard procedure for waste delistings under the Act includes public notice of the proposed delisting in a newspaper, opportunity for a public hearing, detailed environmental impact information provided by the petitioner, and the opportunity for the IEPA to join as a copetitioner—none of which is required by the identical-in-substance procedure. See 415 ILCS 5/28.1(d) (West 1994).

According to Horsehead, the Act authorizes the Board to adopt identical-in-substance federal regulations only when failure to adopt would threaten the USEPA's authorization of Illinois' hazardous waste program. Horsehead notes that section 7.2(a) of the Act, the Board's authority for the identical-in-substance procedure, begins: "In the context of a mandate that the Board adopt regulations to secure federal authorization for a program ***." 415 ILCS 5/7.2(a) (West 1994). Horsehead further notes that section 22.4(a) of the Act provides: "[i]n accordance with Section 7.2, the Board shall adopt regulations which are identical in substance to federal regulations or amendments thereto promulgated by the administrator of the United States Environmental Protection Agency." 415 ILCS 5/22.4(a) (West 1994). Horsehead concludes that the Board erroneously applied the identical-in-substance procedure as a vehicle for adopting the K061 delisting because it was not necessary in order for Illinois to maintain its RCRA authorization.

■ Since the Board is charged with administering the IEPA, its interpretation of the statute is entitled to deference. *Central Illinois Public Service Co. v. Pollution Control Board*, 116 Ill. 2d 397, 409, 507 N.E.2d 819 (1987). When an administrative agency such as the Board exercises its rulemaking powers, it is performing a quasi-legislative function and, therefore, has no burden to support its conclusions with a given quantum of evidence. *Illinois State Chamber of Commerce v. Pollution Control Board*, 177 Ill. App. 3d 923, 928, 532 N.E.2d 987 (1988). A reviewing court may overturn the Board's determina-

tion only if it is arbitrary and capricious. *CIPS*, 116 Ill. 2d at 407. In *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 524 N.E.2d 561 (1988), the supreme court provided certain guidelines for determining whether an administrative agency's action is arbitrary and capricious:

"Agency action is arbitrary and capricious if the agency: (1) relies on factors which the legislature did not intend for the agency to consider; (2) entirely fails to consider an important aspect of the problem; or (3) offers an explanation for its decision which runs counter to the evidence before the agency, or which is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." 122 Ill. 2d at 505-06, citing *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43, 77 L. Ed. 2d 443, 458, 103 S. Ct. 2856, 2866-67 (1983).

■ Prior to 1990, the Act provided that the Board could only adopt federal hazardous waste delistings through the identical-in-substance rulemaking procedure. See *In re Petition of Envirite Corp.*, Ill. Pollution Control Bd. No. R87—30 (January 7, 1988). On March 1, 1990, Illinois was delegated authority by the USEPA to delist wastes directly. 55 Fed. Reg. 7320 (March 1, 1990). The Board thereafter promulgated the procedures under which Illinois waste delistings were to proceed. Specifically, section 720.120(a) of the Code provides that "[a]ny person may petition the Board to adopt as State regulations rules which are identical in substance with newly-adopted federal amendments or regulations. The petition shall take the form of a proposal for rulemaking ***." 35 Ill. Adm. Code § 720.120(a) (1996). Section 720.122 of the Code, titled "Waste Delisting," states in pertinent part: "[d]elisting of specific wastes from specific sources that have been adopted by U.S. EPA may be proposed as State regulations that are identical in substance pursuant to Section 720.120(a)." 35 Ill. Adm. Code § 720.122(m) (1996). Furthermore, paragraph (n) of this section provides that "*[d]elistings which have not been adopted by U.S. EPA* may be proposed to the Board pursuant to a petition for adjusted standard pursuant to 35 Ill. Adm. Code 106.Subpart G." (Emphasis added.) 35 Ill. Adm. Code § 720.122(n) (1996).

■ We find no support for Horsehead's assertion that the Board may utilize the identical-in-substance procedure only when necessary to secure or maintain USEPA authorization for the Illinois RCRA program. Similarly, Horsehead has not directed this court to any provision in either the Act or the Code which indicates that Illinois' authority to grant adjusted standards thereby limits the Board's ability to adopt a new federal hazardous waste delisting into Illinois law via the identical-in-substance procedure under the facts of this case.

Horsehead claims that *In re Petition of Envirite Corp. for an Adjusted Standard*, Ill. Pollution Control Bd. No. 94—10 (December 14, 1994), supports the argument that the Board was only authorized to delist K061 hazardous waste through the adjusted standard procedure. However, in that case, Envirite did not petition the Board to adopt an identical-in-substance regulation; rather, it proposed certain changes in sampling and analytical protocols to a delisting originally granted by the USEPA. Therefore, the Board correctly considered the revision through the adjusted standard procedure because it was a proposed deviation of the federal delisting. *Envirite* simply stands for the proposition that the Board cannot use the identical-in-substance procedure where the requested delisting is not wholly contained in the federal regulation. We conclude that Horsehead has not met its burden of showing that the Board's decision was arbitrary and capricious and, therefore, we affirm the Board's decision.

Horsehead further argues that the Board erred in failing to consider submitted comments to the proposed K061 delisting. Horsehead's comments asserted that the delisting violated state and federal statutory mandates and policies prioritizing recycling over treatment and disposal, that it violated the substantive requirements of Illinois' delisting regulations, and that it was scientifically and technically invalid. However, given our conclusion that the Board properly applied the identical-in-substance procedure in adopting the USEPA delisting of K061, we need not address this argument. Section 7.2(a) of the Act provides:

> "After consideration of comments from the USEPA, the Agency, the Attorney General and the public, the Board shall adopt the verbatim text of such USEPA regulations as are necessary and appropriate for authorization of the program. In adopting 'identical in substance' regulations, the only changes that may be made by the Board to the federal regulations are those changes that are necessary for compliance with the Illinois Administrative Code, and technical changes that in no way change the scope or meaning of any portion of the regulations ***." 415 ILCS 5/7.2(a) (West 1994).

Section 7.2(a) lists a few exceptions to this general rule that are not applicable to this case. The Board was clearly cognizant of this provision, as it stated in its ruling that "[t]he theory behind the identical-in-substance procedure is that the USEPA has reviewed all the merits of the actions that it has undertaken, so substantive Board review of those actions is not necessary." Since we conclude that the Board properly implemented the identical-in-substance procedure in adopting the K061 delisting, we also conclude that it correctly adopted the

verbatim text of the USEPA regulations as necessary for compliance with the Code (415 ILCS 5/7.2(a) (West 1994)).

For the foregoing reasons, we affirm the decision of the Board.

Affirmed.

HARTMAN, P.J., and HOURIHANE, J., concur.