FIFTH DIVISION

    August 22, 2003 

1-02-1771

MOUNT VERNON FIRE INSURANCE COMPANY, ) Appeal from the

) Circuit Court of 

  Plaintiff-Appellant and ) Cook County. 

Counterdefendant, )

) 

v. )

)

)

HEAVEN'S LITTLE HANDS DAY CARE, a not )

for profit Illinois Corporation, )

LEON TAYLOR, Individually, MINNIE )

TAYLOR, Individually and as Employee )

and/or agent of Heaven's Little Hands )

Day Care, and MARGARET JONES, )

Individually and as Special Executor )

of the Estate of Tyrelle Jones, )

deceased, )

)

Defendants-Appellees )

) )

(Jefferson Insurance Company )

of New York, )

) Honorable  

  Intervenor and Defendant and ) Gay-Lloyd Lott, 

    Counterplaintiff-Appellee). ) Judge Presiding.

JUSTICE QUINN delivered the opinion of the court:

In this declaratory judgment action, Mount Vernon Fire Insurance Company (Mount Vernon) appeals the order of the trial court granting the motion for judgment on the pleadings filed by Jefferson Insurance Company of New York (Jefferson).  This litigation stems from the death of Tyrelle Jones (Tyrelle), a nine-month-old infant who died as the result of heat stroke when left unattended in a van operated by Heaven's Little Hands Day Care (Heaven's Little Hands).  In reliance upon exclusions contained in its policy with Heaven's Little Hands, Mount Vernon sought a declaration that it had no duty to defend or indemnify the day-care center or its employees in the lawsuit filed by Margaret Jones, Tyrelle's mother.  Jefferson moved for judgment on the pleadings, which the trial court granted.  After the trial court found there was no just reason for delaying enforcement or appeal of its ruling, Mount Vernon appealed.  Based upon the automobile exclusions contained in its policy with Heaven's Little Hands, Mount Vernon contends that the trial court erred in granting Jefferson's motion for judgment on the pleadings.  For the reasons set forth below, we affirm the judgment of the trial court.

BACKGROUND

In September 2000, Margaret, individually and as the special administrator of the estate of Tyrelle, filed a nine-count complaint against Heaven's Little Hands, Leon Taylor and Minnie Taylor.  Leon was named as an employee of Heaven's Little Hands and Minnie as its manager.  In the complaint, Margaret alleged that on August 29, 2000, Tyrelle and other infants and toddlers were picked up by a passenger van driven by Leon and owned and operated by Heaven's Little Hands.  According to the complaint, Leon strapped Tyrelle in a car seat for his transport to Heaven's Little Hands.  Once there, Leon removed all of the children from the van except Tyrelle, who died from heat stroke after being left unattended in the van for more than eight hours.

In her complaint, Margaret alleged negligent and careless acts against Leon based upon his: (1) failure to transport Tyrelle with the proper number of adult attendants; (2) failure to inspect the van after arriving at its destination to ensure that no children were left in the vehicle; (3) leaving Tyrelle unattended in the van; (4) failure to remove Tyrelle from the van; and (5) failure to maintain a safe environment for Tyrelle, who had been entrusted to Leon's care. 

As for Minnie and Heaven's Little Hands, Margaret alleged that they had been careless and negligent based upon their: (1) failure to assign sufficient personnel to attend to children being transported to Heaven's Little Hands; (2) allowing use of the van when it had not been inspected and had not received an operating permit; (3) allowing Leon to operate the van when he had not satisfied driving requirements; (4) failure to monitor Leon in the performance of his duties; (5) failure to maintain a proper census of the children scheduled to attend Heaven's Little Hands; (6) failure to maintain proper procedures to ensure that children transported in the van were removed from the van and taken inside the day-care center; and (7) failure to maintain proper and sufficient procedures for the safety and care of children left in their care.  

On February 15, 2001, Mount Vernon filed a complaint for declaratory judgment naming Heaven's Little Hands, Leon, Minnie and Margaret as defendants.  In the complaint, Mount Vernon sought a declaration of the trial court that Mount Vernon did not owe a duty to defend or indemnify for any claims relating to the Jones lawsuit.  Mount Vernon argued that under coverage for both professional liability and bodily injury, its policy with Heaven's Little Hands provided for an exclusion for liability arising out of use of an auto.  

After Mount Vernon filed its complaint for declaratory judgment, Jefferson, the auto insurance carrier for Heaven's Little Hands, was granted leave to intervene and filed a counterclaim for declaratory judgment against Mount Vernon.  In its counterclaim, Jefferson stated that it was the insurer of Heaven's Little Hands under a commercial automobile policy and that Mount Vernon was an insurer of the day-care center under a commercial general liability (CGL) policy.  Jefferson sought a declaration that Mount Vernon was obligated to share in the defense costs associated with the Jones litigation.  

While the declaratory judgment action was proceeding, Margaret filed a first amended complaint, which contained allegations substantially similar to those in her original complaint.  The primary distinction between the two complaints was that rather than alleging a single wrongful death action against Heaven's Little Hands as Margaret had done in her original complaint, the amended complaint alleged two counts of wrongful death.  One was premised upon negligent operation of a motor vehicle and the other was premised upon negligent supervision. 

On February 4, 2002, Jefferson filed a motion for judgment on the pleadings relating to its counterclaim against Mount Vernon.  Margaret joined Jefferson's motion for judgment on its counterclaim.  Later that month, Mount Vernon filed its motion for summary judgment on its complaint.

On May 21, 2002, the trial court entered a written order granting Jefferson's motion for judgment on the pleadings and denying Mount Vernon's motion for summary judgment.  In its order, the trial court stated, "The court finds *** that the death of Tyrelle Jones, deceased, was not the result of operation or use of, the loading of, or unloading of the vehicle, a van, but rather the child was left in the van because of negligence on the part of the driver of the van who had a responsibility for the safety of the child." 

On June 12 2002, the trial court entered an order stating that pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) there was no reason to delay enforcement or appeal of its ruling on Jefferson's motion on the pleadings.  Mount Vernon now appeals.       

ANALYSIS

Relating to professional coverage, the terms of the insurance agreement between Mount Vernon and Heaven's Little Hands provided:

"
I. COVERAGE P. PROFESSIONAL LIABILITY

We will pay on behalf of you all sums which you shall become legally obligated to pay as damages because of liability arising out of any negligent act, error or omission in rendering or failure to render professional services *** whether committed by you or any person employed by you or by others for whom you are legally responsible.

II.  EXCLUSIONS

*** 

This Coverage Part does not apply:

***

(d) to liability arising out of the ownership, maintenance, operation, use, loading or unloading of any vehicle, watercraft or aircraft ***."  

Relating to coverage for bodily injury and property damage, the policy provided:
   

"
Section I -- Coverages

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. 
We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies ***."  

The general liability coverage portion of the policy contains the following exclusion:

"
2. Exclusions

g. Aircraft, Auto or Watercraft

'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured.  Use includes 'loading or unloading'.

***

11. 'Loading or unloading' means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or 'auto';

b. While it is in or on an aircraft, watercraft or 'auto'; or 

    c. While it is being moved from an aircraft, watercraft or 'auto' to the place where it is finally delivered ***."  

A motion for judgment on the pleadings tests the sufficiency of the pleadings by determining whether the plaintiff is entitled to the relief sought in the complaint.  
Pekin Insurance Co. v. Allstate Insurance Co.
, 329 Ill. App. 3d 46, 49 (2002).  Although a motion for judgment on the pleadings is similar to a motion for summary judgment insofar as both suggest that no material issue of fact exists, a judgment on the pleadings must rely on the allegations of the complaint to establish the absence of material fact, whereas summary judgment may rely on affidavits and other documents.  
Waterfront Estates Development, Inc. v. City of Palos Hills
, 232 Ill. App. 3d 367, 371-72 (1992).  In addition, the well-pleaded allegations in the nonmoving party's pleading and inferences therefrom are taken as true.  See 
Mitchell v. Waddell
, 189 Ill. App. 3d 179, 182 (1989).  Our review of the disposition of a case on judgment on the pleadings is 
de
 
novo
.  
Pekin Insurance
, 329 Ill. App. 3d at 49.

When construing an insurance policy, the primary function of this court is to ascertain and enforce the intentions of the parties as expressed in the agreement.  
de los Reyes v. Travelers Insurance Cos.
, 135 Ill. 2d 353, 358 (1990).  When ascertaining the meaning of the words used in the policy and the intent of the parties, we are to construe the policy as a whole, while taking into account "the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract."  
Crum & Forster Managers Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 391 (1993).

Insurance policies are to be liberally construed in favor of coverage, and where an ambiguity exists in the terms of the contract, the ambiguity will be resolved in favor of the insured and against the insurer.  
State Security Insurance Co. v. Burgos
, 145 Ill. 2d 423, 438 (1991).  The duty of an insurer to defend its insured is much broader than its duty to indemnify.  
Outboard Marine Corp. v. Liberty Mutual Co.
, 154 Ill. 2d 90, 125 (1992).  When determining whether the insurer has a duty to defend, the court must compare the allegations contained in the underlying complaint to the language contained in the policy.  
Outboard Marine
, 154 Ill. 2d at 125.  While liberally construing the underlying complaint in favor of the insured, if the court determines that the allegations fall within, or potentially within, coverage under the policy, the insurer has a duty to defend the insured against the underlying complaint.  
Outboard Marine
, 154 Ill. 2d at 125. 

Mount Vernon contends that the trial court erred in granting Jefferson's motion for judgment on the pleadings.  Initially, we note that throughout Mount Vernon's original brief on appeal, it repeatedly asserts that Tyrelle's death arose out of the "use, operation, loading or unloading" of the van.  However, "loading or unloading" is defined to include only the "handling of property."  Thus, because the injury at issue, the death of Tyrelle, has nothing to do with the handling of property, we find that the auto exclusion relating to "loading and unloading" does not serve as a basis for finding that Mount Vernon does not have a duty to defend.    

Mount Vernon first argues this case is controlled by the supreme court's ruling in 
Northbrook Property & Casualty Co. v. Transportation Joint Agreement
, 194 Ill. 2d 96 (2000), which was a declaratory judgment action stemming from an accident where a METRA train collided with a school bus, resulting in death and injuries to students on the bus.  The school districts' CGL policy excluded losses for bodily injury "arising out of the *** use *** of any *** 'auto.'" 194 Ill. 2d at 98.  The trial court granted summary judgment in favor of the insurance carrier, finding that it had no duty to defend the school districts in the litigation following the accident.  The appellate court reversed, holding that the underlying complaints had adequately alleged that the injuries could have arisen from causes other than the use or operation of the bus, such as the failure of the school districts to adequately plan and inspect the bus routes and warn the bus drivers of potential hazards.  The supreme court reversed the judgment of the appellate court, ruling that the insurance carrier had no duty to defend the school districts.  The supreme court explained:

"Here, the allegations of the underlying complaints utterly fail to state facts which either actually or potentially bring the cases within the policy's coverage.  The policy excludes injuries arising from the school districts' use or operation of a motor vehicle.  Allegations that the school districts inadequately planned and inspected bus routes or failed to warn bus drivers of potential hazards along the routes are nothing more than rephrasings of the fact that the students' injuries arose from the school districts' use or operation of a motor vehicle.  Contrary to the appellate court's holding, the students' complaints failed to allege that the injuries arose from events 'wholly independent of any negligent operation of the bus.'  309 Ill. App. 3d at 266." 
Northbrook
, 194 Ill. 2d at 98-99. 

Mount Vernon argues that as in the 
Northbrook
 case, here, Margaret had failed to allege that Tyrelle's death arose from events "wholly independent" of any use, operation, loading or unloading of the van.  It advances that because all theories of alleged negligence in the underlying complaint, including those relating to a failure to supervise or maintain head counts, are dependent upon allegations of use or operation of the van, the auto exclusion applies. 

Mount Vernon also directs this court's attention to 
St. Paul Mercury Insurance Co. v. Chilton-Shelby Mental Health Center
, 595 So. 2d 1375 (Ala. 1992), where the Supreme Court of Alabama considered a case in which a small child was left unattended in a van and subsequently died of heat stroke.  The court ruled that an automobile exclusion contained in a CGL policy precluded coverage for the child's death.  Although the underlying complaint included allegations other than negligence in the operation of the van, the court concluded that "the fact remains that [the victim] died in the van while it was being used by the [day-care center] to provide transportation services to the communities it serves."  
St. Paul Mercury
, 595 So. 2d at 1377.

Jefferson argues that the 
Northbrook
 case is distinguishable from this case on the basis that in 
Northbrook
, at issue was coverage involving a "straightforward auto accident."  Jefferson recognizes that both here and in 
Northbrook
, the underlying complaints alleged that the injuries arose from more than merely the negligent operation of a vehicle, but asserts that in the instant case, it cannot be said that the multiple allegations of negligence are "nothing more than rephrasings" that Tyrelle's death arose out of operation of the van.  

Jefferson argues that Tyrelle's death did not arise out of operation or use of the van because the vehicle was merely the situs of the injury and that nothing in the inherent nature of the vehicle is alleged to have contributed to the child's death.  In support of its position, Jefferson asserts that the instant case is factually indistinguishable from 
United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.
, 107 Ill. App. 3d 190 (1982) (
USF&G
).  In 
USF&G
, the insurance carrier brought an action for declaratory judgment wherein it argued that it owed no duty to defend a day-care center for injuries a child had sustained when she fell from a station wagon owned by the day-care center.  In the underlying complaint, it was alleged in count I that the defendants were negligent in the operation of the day-care center by failing to provide sufficient personnel to adequately care for the children and in failing to retain sufficient control and discipline over the children.  In count II, it was alleged that the defendants had negligently operated the automobile.  In reliance upon a provision of the insurance policy excluding coverage for "bodily injury arising out of the ownership, maintenance, operation [or] use of *** any automobile *** owned or operated by *** any insured" (107 Ill. App. 3d at ____), the insurance carrier moved for summary judgment, arguing that it owed no duty to defend because the child's injuries could not have occurred without the operation or use of the station wagon.  This court disagreed, noting that "if the liability of an insured arises from negligent acts which constitute non-auto- related conduct, the policy should be applicable regardless of the automobile exclusion or the fact that an automobile was involved in the occurrence."  
USF&G
, 107 Ill. App. 3d at 194.  The court further noted that "the duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery against an insured even if only one or some of them are within the policy coverage."  
USF&G
, 107 Ill. App. 3d at 194.

Jefferson also argues that based upon the allegations in the underlying complaint, the van was not being "used" at the time of Tyrelle's death.  Jefferson asserts that Tyrelle's death occurred when the van was parked, with no driver, and that it was not performing any of the functions normally associated with "use" of an auto.  In support of this argument, Jefferson directs this court to 
State Farm Mutual Automobile Insurance Co. v. Pfiel
, 304 Ill. App. 3d 831 (1999), and a line of cases cited within the 
Pfiel
 case.  In 
Pfiel
, the mother of a murder victim, who had been stabbed by a hunting knife in an automobile, filed a lawsuit against the murderer and his parents.  In her complaint, the victim's mother sought damages based upon the negligent supervision of the murderer on the part of his parents and their negligent entrustment of the hunting knife and automobile to him.  After the parent-defendants tendered their defenses to their insurance carrier, the insurance carrier sought a declaration that there was no coverage under the relevant automobile policy.  Pursuant to the terms of the policy, coverage extended to damages for bodily injury "resulting from the ownership, maintenance or use" of the car.  
Pfiel
, 304 Ill. App. 3d at 833.  The trial court granted summary judgment in favor of the insurance company.  In affirming the trial court, this court stated:

"A causal relation or nexus must exist *** between the accident or injury and the ownership, use or maintenance of the vehicle in order for the accident or injury to come within the policy coverage; where such nexus or connection is absent, coverage is denied. 
Jiffy Cab
, 265 Ill. App. 3d at 540 (although a dispute over the destination or route of a taxicab, resulting in a stabbing outside the taxicab, 'may well have created a hostile atmosphere between the parties,' 'the mere creation of such an atmosphere is an insufficient causal connection upon which to predicate coverage under an automobile liability policy').  See also 
Laycock v. American Family Mutual Insurance Co.
, 289 Ill. App. 3d 264, 682 N.E.2d 382 (1997); 
Aryainejad v. Economy Fire & Casualty Co.
, 278 Ill. App. 3d 1049, 663 N.E.2d 1107 (1996) (
Aryainejad
).  The resolution of this issue must be obtained by determining whether the alleged use of the vehicle is reasonably consistent with the inherent nature of the vehicle.  See, 
e.g.
,
 Doe v. State Farm Fire & Casualty Co.
, 878 F. Supp. 862 (E.D. Va. 1995) (when abductor pushed insured's head against interior automobile window, the injuries were somewhat causally connected to the automobile, but were not connected to use of the automobile as an automobile); 
United Services Automobile Ass'n v. Aetna Casualty & Surety Co.
, 75 A.D.2d 1022, 429 N.Y.S.2d 508 (1980) (the 'accident' causing injury, occurring inside the vehicle, must be connected with the use of an automobile 
qua
 automobile); 
Allstate Insurance Co. v. Furo
, 588 So. 2d 61 (Fla. Dist. Ct. App. 1991) (passenger shot in vehicle was not entitled to insurance recovery because injury did not result from 'use of motor vehicle' and vehicle was mere situs of injury and not cause of it)."  
Pfiel
, 304 Ill. app. 3d at 836.

Applying the rationale of these cases to the facts in the 
Pfiel
 case, this court affirmed the trial court's granting of summary judgment in favor of the insurance company because the policy did not cover the conduct alleged in the complaint.  This court found that the manner in which the murderer "used" the vehicle to injure the victim was "attenuated from the actual legitimate purpose of an automobile and, therefore, not contemplated by the parties to the insurance contract."  
Pfiel
, 304 Ill. App. 3d at 836-37.  We additionally noted that "liability arose from nonvehicular conduct and existed independent of the 'use' or 'ownership' of the vehicle" and that actual involvement of the vehicle was "incidental to the injuries" sustained by the victim.  
Pfiel
, 304 Ill. App. 3d at 837.

Mount Vernon argues that Jefferson's reliance upon the 
USF&G
 cases is erroneous because under 
Northbrook
, it is no longer proper to import tort law principles into contract construction.  See also 
Allstate Insurance Co. v. Smiley
, 276 Ill. App. 3d 971 (1995) (criticizing 
USF&G
 for its "assimilation of principles from tort law into the analysis of an insurance policy").  

Mount Vernon further argues that the transportation of children in a vehicle is reasonably consistent with the inherent nature of the vehicle.  In support of this argument, Mount Vernon directs us to 
Aryainejad v. Economy Fire & Casualty Co.
, 278 Ill. App. 3d 1049 (1996), where the driver of a vehicle was injured when he swerved to avoid hitting an uninsured motorist, who had run out of gasoline and was walking on an interstate highway en route to a gas station.  The injured driver sought coverage under the uninsured motorist provision of his insurance policy, which provided that " 'the owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the uninsured motor vehicle.' "  
Aryainejad
, 278 Ill. App. 3d at 1050.  Finding that the accident which caused the motorist's injuries was unrelated to the ownership, maintenance or use of the vehicle of the man walking in the road, the trial court ruled that the injured motorist's insurance company was not obligated to cover his damages.  On appeal, this court reversed that ruling.  In addressing whether an injury arises out of "use" of an automobile, we stated that injuries from physical altercations do not arise out of the "use" of an automobile because such altercations "are not a normal or reasonable consequence of the use of a vehicle."  
Aryainejad
, 278 Ill. App. 3d at 1054-55.  In reversing the trial court, this court stated, "walking down the highway after a vehicle breaks down or runs out of gas is a reasonable consequence of the use of a vehicle."  
Aryainejad
, 278 Ill. App. 3d at 1055.  

In reliance on 
Aryainejad
, Mount Vernon asserts that just as walking down the interstate after running out of gas is a reasonable consequence of the use of a vehicle, so is forgetting to remove a child from a vehicle.  Mount Vernon further asserts that there are no allegations in the underlying complaint that Tyrelle was in the van for any reason other than to be transported to the day-care center, which is clearly a contemplated use.  Additionally, Mount Vernon argues that allegations of systematic failure to maintain head counts are geared toward ensuring that children are removed from automobiles in the first instance and, therefore, they also arise out of the use of an automobile. 

The 
Northbrook
 case is factually distinguishable from this case.  Jefferson is correct in its assessment that at issue in 
Northbrook
 was a common, albeit tragic, automobile accident.  The accident there occurred when the bus was being used in a manner consistent with its customary use.  Here, Tyrelle's death occurred when the van was not being used at all, rather than when it was being used as a method of transportation.  Unlike the situation in 
Northbrook
, the death of an infant from heat stroke when left unattended in a vehicle for an eight-hour period is attenuated from the actual legitimate purpose of the van.  Although the transport of children to Heaven's Little Hands is certainly a legitimate purpose of the van, the deserting of a small child in the vehicle for an extended period of time is not. 

As in the 
Pfiel
 case, we find after reviewing the allegations in the underlying complaint that the victim's death resulted from nonvehicular conduct on the part of Heaven's Little Hands and its employees.  The allegations in the complaint assert multiple theories of negligence including a failure to maintain a proper census of the children attending the day-care facility.  Had Leon kept an accurate head count of the children inside the van or if someone inside Heaven's Little Hands had noticed Tyrelle's absence soon after the van in question had arrived at the day care facility, Tyrelle would not have died.  In short, the van is the situs, rather than the cause, of Tyrelle's death. 

The 
Aryainejad
 case does little to support Mount Vernon's position.  We do not dispute that walking down the interstate after running out of gas is a reasonable consequence of use a car.  In reliance on 
Aryainejad
, Mount Vernon asks this court to hold that forgetting to remove a child from a vehicle once that child has been transported to a day-care facility is a reasonable consequence of use of the vehicle.  We decline to so hold.  Simply put, leaving an infant in an automobile used to transport him to a day-care facility is not a normal or reasonable consequence of the use of the vehicle.      

We also reject Mount Vernon's argument that 
Northbrook
 has overruled 
USF&G
 
and all other cases importing tort principles into contract construction.  At no time in 
Northbrook
 did the supreme court state that it was overruling all cases in Illinois that have applied tort principles when interpreting insurance contracts.  Nor did the supreme court state that for the plaintiffs to recover, they must allege that the students' injuries arose from events "wholly independent of any negligent operation of the bus."  Considered in context, the supreme court was merely criticizing this court's ruling in 
Northbrook
 and was not overruling a long line of Illinois cases.  

We recognize that the Supreme Court of Alabama reached a different conclusion in 
St. Paul Mercury
 different from the one we have reached in the instant case.  However, we are not bound by the holding in the 
St. Paul Mercury
 case because cases from foreign jurisdictions are not binding upon this court.  See 
VanPlew v. Riccio
, 317 Ill. App. 3d 179, 184 (2000).  Moreover, by stating that the victim died in the van "while it was being used" by the day-care facility, the court in 
St. Paul Mercury
 merely stated a conclusion in the absence of analysis.  We further note that the 
St. Paul Mercury
 court held that there 
was
 coverage under the professional liability portion of the CGL policy at issue.  The court held that the providing of transportation services was within the meaning of "professional services" as contemplated by the parties to the insurance agreement.  Mount Vernon posits that, unlike the insurance policy at issue here, the professional liability coverage portion of the policy in 
St. Paul Mercury
 "apparently" contained no auto exclusion as the Supreme Court of Alabama did not discuss it.  This omission also undercuts Mount Vernon's position that we should follow 
St. Paul Mercury
.  
Therefore, because the application of an exclusion that results in denying the duty to defend "must be clear and free from doubt," we affirm the trial court's granting of judgment on the pleadings. 
Oakley Transport, Inc. v. Zurich Insurance Co.
, 271 Ill. App. 3d 716, 721-22 (1995).   

Finally, Mount Vernon argues that the trial court's granting of judgment on the pleadings should be reversed because in its order, the trial court found that Tyrelle's death occurred because he "was left in the van because of negligence on the part of the driver of the van."  According to Mount Vernon, the trial court has "arguably" ruled on the ultimate issue of negligence, an issue that is only appropriately determined in the underlying litigation.  Consequently, we should reverse the trial court's judgment relating to Mount Vernon's duty to defend.  See 
State Farm Fire & Casualty Co. v. Leverton
, 289 Ill. App. 3d 855 (1997).

While Mount Vernon appears to be correct that the trial court improperly stated that Tyrelle's death occurred "because of negligence" on the part of the van's driver, we need not reverse the trial court's judgment.  A review of the trial court's May 21, 2002, order makes clear that it was ruling only upon Mount Vernon's duty to defend.  In its order, the trial court stated, "Mt. Vernon has brought an action for declaratory judgment to obtain a judicial declaration that Mt. Vernon is not obligated to defend Heaven's Little Hands in a wrongful death action."  The trial court's written order further makes clear that its ruling was based upon allegations contained in the underlying complaint.  Nowhere in its order did the trial court state that it was ruling upon the indemnification issue.  In fact, Mount Vernon does not assert that the trial court actually ruled on the indemnification issue; rather, it asserts only that it "arguably" did.  The trial court's choice of words cannot serve as a basis for reversing its judgment.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P.J., and REID, J., concur.