DONNA RADASZEWSKI, Guardian for Eric Radaszewski, on His Behalf, Plaintiff-Appellant, v. JACKIE GARNER, Director, The Department of Public Aid, Defendant-Appellee.

Second District    No. 2—02—1276

Opinion filed December 10, 2003.—Supplemental opinion filed on denial of rehearing March 25, 2004.

Sarah Megan, of Prairie State Legal Services, Inc., of Batavia, and Bernard H. Shapiro and Eliot Abarbanel, both of Prairie State Legal Services, Inc., of Carol Stream, for appellant.

Lisa Madigan, Attorney General, of Chicago (David Adler, Karen Konieczny, and Mary E. Welsh, Assistant Attorneys General, of counsel), for appellee.

JUSTICE GROMETER delivered the opinion of the court:

Plaintiff, Donna Radaszewski, filed an action as guardian for and on behalf of her son, Eric Radaszewski, in the circuit court of Du Page County. Plaintiff sought, *inter alia*, to enjoin the enforcement of certain regulations promulgated by the Illinois Department of Public Aid (IDPA) that bar her son from receiving the level of aid he received prior to turning 21. Jackie Garner, the defendant and director of the IDPA, moved to dismiss the complaint pursuant to section 2—615 of

the Civil Practice Law (735 ILCS 5/2—615 (West 2002)). The circuit court agreed with defendant and granted judgment on the pleadings. For the reasons that follow, we reverse and remand.

## I. BACKGROUND

The following is taken from plaintiff's complaint, supporting documentation, and other court documents of which we may take notice (*Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 275 (2001) ("a court of review may take judicial notice of prior litigation")). Plaintiff is the mother of Eric Radaszewski, a disabled adult. Eric was born on August 5, 1979, and turned 21 in August 2000. He receives disability benefits through the federal Supplemental Security Income program and is eligible for Medicaid.

In February 1992, Eric was diagnosed with brain cancer. He suffered a stroke on December 24, 1993, after he had undergone radiation therapy, chemotherapy, and surgery. The cancer, stroke, and surgery have left Eric with a low level of mental and bodily functioning.

In Eric's physician's opinion, Eric requires individual 24-hour private duty nursing in order to survive. During the five years leading up to his twenty-first birthday, 16 hours of private duty nursing per day were funded by Medicaid. His parents, who were specially trained to care for him, provided the balance of the care. Medicaid also funded an additional 336 hours of nursing services per year to provide his parents some respite. Shortly before Eric's twenty-first birthday, state officials informed plaintiff that she should apply for funding through an alternate program. It was the IDPA's position that it did not fund private duty nursing for individuals over the age of 21 in accordance with what plaintiff alleges to be an unwritten policy. Plaintiff applied for the alternate program through the Office of Rehabilitation Services (ORS). On February 18, 2000, the ORS issued a decision stating that Eric was entitled to aid in the amount of $4,943 per month. According to plaintiff, this level of funding only pays for five hours of nursing per day. Plaintiff appealed the ORS's decision. On August 18, 2000, Ann Patla, the former director of the IDPA, issued an opinion affirming the ORS's decision.

On September 1, 2000, plaintiff filed an action in the United States District Court for the Northern District of Illinois seeking an injunction for an alleged violation of the federal Medicaid program. The federal court denied plaintiff's request for a preliminary injunction, and plaintiff appealed this ruling. Plaintiff then commenced the instant action on December 1, 2000. Plaintiff's initial complaint alleged violations of the state Medicaid plan, section 140.435 of the Il-

linois Administrative Code (89 Ill. Adm. Code § 140.435 (2000)), breach of contract, and that the IDPA's unwritten policy concerning not providing private duty nursing to individuals over 21 years of age was, in fact, a rule that was not properly promulgated pursuant to the Illinois Administrative Procedure Act (Act) (5 ILCS 100/1—1 *et seq.* (West 2000)). Subsequently, the circuit court entered a *temporary restraining order* barring defendant from reducing Eric's nursing services.

On January 3, 2001, defendant submitted an amendment to the Department of Health and Human Services (HHS) that specified that private duty nursing was not covered for adults. The amendment was approved on February 2, 2001. The IDPA then initiated rulemaking under the Act by publishing notice of the proposed amendment in the Illinois Register on March 16, 2001. The notice stated that the amendment was a clarification. A hearing on the proposed amendment was held on May 23, 2001, and the amendment was submitted to the Joint Committee on Administrative Rules on July 23, 2001. The committee reviewed the amendment and issued no objection. On September 1, 2001, the IDPA filed a certified copy of the amended rules with the Secretary of State's office.

## II. ANALYSIS

The instant appeal presents two main issues. First, we must determine whether after turning 21 Eric was eligible under the pre-amended version of the applicable regulations for the amount of private duty nursing plaintiff seeks. If he was not, then any discussion of whether the amendment was validly promulgated is beside the point. He would not be entitled to receive the aid plaintiff seeks for him even if the amendment was void. If we answer this question in the affirmative, we must consider whether the IDPA validly promulgated the amendment. As to the latter point, plaintiff raises two arguments. She first contends that the notice published by the IDPA of the proposed rulemaking was insufficient. Second, she argues that the IDPA's apparent compliance with the Act was a sham and that the IDPA had already determined it would adopt the proposed rule before it entered into the rulemaking process.

The first issue requires that we construe the various statutes and regulations on which the parties rely. This question is purely one of law, which we review *de novo. Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 288 (2002). Since the trial court granted judgment on the pleadings, we must determine whether the trial court correctly concluded that no issue of material fact was presented by the pleadings and that defendant was entitled to judg-

ment as a matter of law. *Employers Reinsurance Corp. v. E. Miller Insurance Agency, Inc.*, 332 Ill. App. 3d 326, 334 (2002).

## A. The Former Regulations

■ First, we turn to the question of whether Eric was entitled to the aid plaintiff now seeks under the regulations as they existed before the IDPA purportedly amended them. Administrative regulations are construed using the same standards that guide statutory interpretation. *People ex rel. Department of Labor v. MCC Home Health Care, Inc.*, 339 Ill. App. 3d 10, 21 (2003). Accordingly, our primary goal is to ascertain the intent of the agency that drafted the regulation. *People v. Bonutti*, 338 Ill. App. 3d 333, 341 (2003). The best indicator of that intent is the language of the regulation itself. *Bonutti*, 338 Ill. App. 3d at 341. Where the language is clear, it must be given effect without resort to further aids of construction, and a court may not read into it any exceptions, conditions, or limitations that the agency did not express. See *Davis v. Toshiba Machine Co.*, 186 Ill. 2d 181, 184-85 (1999).

■ In arguing that Eric is entitled to continue to receive the benefits he received before turning 21, plaintiff relies primarily on the plain language of section 140.435(b) of the IDPA's regulations (89 Ill. Adm. Code § 140.435(b) (2000)), which provides as follows:
"Payment shall be made for the following services:
1) In-Home Nursing Services [*sic*]
2) Private duty nursing services."
Quite simply, according to plaintiff, the regulation states that private duty nursing services are covered under the state Medicaid plan. Plaintiff bolsters her argument by pointing to the previous state Medicaid plan. The plan is a document submitted to HHS that details the state's level of participation in the federal Medicaid program. See 42 U.S.C. § 1396 *et seq.* (1994). The 1991 plan stated that private duty nursing services were provided, but it also imposed certain limitations. Regarding limitations, the plan stated:
"8. PRIVATE DUTY NURSING SERVICES
Provided only when recommended by a physician [*sic*]. Requires prior approval [*sic*]. Services cannot be covered if provided by a relative.
Limits on services or treatments are not applicable to EPSDT (Healthy Kids) clients. All services or treatments which are medically necessary to correct or lessen health problems detected or suspected by the screening process must be provided to individuals under the age of 21."
Plaintiff points out that the only limitations specified are that prior approval be secured, that the recommendation of a physician be

obtained, and that the services cannot be provided by a relative. The second paragraph, while excluding these limitations for those under 21, imposes no additional limitations.

Defendant counters that the seemingly simple language of section 140.435(b), read in context, is not so straightforward. Defendant calls our attention to the principle that a statute must not be read in isolation (*People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 49 (2002)) and contends that several other regulations must be considered in interpreting the provision upon which plaintiff relies. Defendant first argues that the determination of who is eligible for certain services is controlled by an entirely different regulation, namely section 140.3 of the regulations (89 Ill. Adm. Code § 140.3 (2000)). This section, titled "Covered Services Under Medical Assistance Programs," lists services covered for individuals over the age of 21 and for those under 21 years of age. See 89 Ill. Adm. Code § 140.3 (2000). However, private duty nursing is not mentioned. Thus, as defendant recognizes, the authority for private duty nursing coverage must come from somewhere else. As such, section 140.3 provides little guidance for interpreting section 140.435(b).

Defendant points to two other sections of the IDPA's regulations that provide coverage for private duty nursing. Section 140.645 provides for certain waivers that allow individuals under the age of 21 to receive in-home nursing. 89 Ill. Adm. Code § 140.645 (2000). Section 140.485, which sets forth the parameters of the state's "Healthy Kids" program, also authorizes private duty nursing. 89 Ill. Adm. Code § 140.485 (2000). However, neither regulation purports to be the exclusive source of authority establishing an entitlement to private duty nursing services. Thus, the mere fact that they exist says nothing about whether private duty nursing services can be authorized by another source. At most, these sections confirm that section 140.3 is not an exclusive list and that other sources, such as section 140.435, authorizing payment for private duty nursing may exist.

Defendant's invocation of the principle that specific statutory provisions control over general provisions (*People v. Villarreal*, 152 Ill. 2d 368, 379 (1992)) is of no help to defendant. For this principle to apply, the provisions must conflict with each other. *Villarreal*, 152 Ill. 2d at 379. While section 140.485 and section 140.645 may be more specific in the sense that they are more detailed than section 140.435(b), neither specifically addresses coverage for private duty nursing for those over the age of 21. In other words, the regulations relied on by defendant do not conflict with section 140.435(b)

We therefore reject defendant's arguments on this point. Having done so, the plain language of section 140.435(b) must be given effect.

Since it plainly states that payment "shall be made" for private duty nursing, we hold that Eric was entitled to the level of benefits he now seeks despite the fact that he attained the age of 21. *Cf. Esteban v. Cook*, 77 F. Supp. 2d 1256, 1262 (S.D. Fla. 1999) ("This Court finds, that once Florida chose to provide wheelchairs to eligible Medicaid recipients, Florida may not arbitrarily or unreasonably deny motorized wheelchairs to [p]laintiffs entirely on the basis of age"); *Salgado v. Kirschner*, 179 Ariz. 301, 306, 878 P.2d 659, 664 (1994) ("[I]t is unreasonable to allocate treatment within a service category solely on the basis of age"). Having decided this question in plaintiff's favor, we now must consider the effect of the IDPA's purported amendment of section 140.435.

## B. The Amendment

Plaintiff next argues that defendant's attempt to amend section 140.435 was invalid because defendant did not comply with the requirements of the Act (5 ILCS 100/1—1 *et seq.* (West 2000)). Plaintiff points to two alleged defects. First, plaintiff contends that the notice published in the Illinois Register was insufficient. Second, plaintiff contends that the IDPA had already decided to adopt the amendment prior to beginning the rulemaking process and its apparent compliance with the Act was a sham.

We find the notice published by the IDPA adequate. The Act requires that an administrative agency publish notice of any proposed rulemaking in the Illinois Register which includes "[a] complete description of the subjects and issues involved." 5 ILCS 100/5—40(b)(3) (2000). This provision has not been judicially construed, and, understandably, the parties rely on much authority—primarily federal—from outside this jurisdiction. Such authority, however, is not particularly helpful, for such cases construe statutes that contain different standards than those embodied in section 5—40 of the Act.

The notice published by the IDPA concerning the proposed amendment contained the following statement:

> "In [s]ection 140.435, certified registered nurse anesthetists are being added as a nurse service eligible for payment by the Department and text relating to coverage for private duty nursing services and in-home nursing services is being stricken. The latter changes are being made as clarifications because payment is provided for private duty nursing services only for children under the age of 21 years who are covered under a waiver, as described in [s]ection 140.645, or are identified as needing the service through an EPSDT screening (Early and Periodic Screening, Diagnosis and Treatment Program), as described in [s]ection 140.485."

Plaintiff has a number of complaints about the notice that the IDPA

published. Plaintiff points out that the amendment pertaining to private duty nursing is entangled with text relating to nurse anesthetists. Plaintiff charges that the IDPA mischaracterized the amendment as a clarification rather than a change. Plaintiff also asserts that the notice did not address issues such as reasons for the amendment, cost considerations, or possible alternatives.

The fact that the notice addressed both nurse anesthetists and private duty nursing does not result in any significant confusion. Addressing both subjects in the same portion of the notice did not result in a situation where the material concerning private duty nursing was difficult to locate. *Cf. Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 991-92 (1980) (finding clause in a contract unconscionable where it was hidden on the reverse side of a document and nothing adequately called party's attention to the condition at issue). Similarly, that the IDPA characterized the amendment as a clarification rather than a change was not misleading. The plain language that followed the characterization clearly conveyed that private duty nursing would only be available to those under the age of 21.

We also reject plaintiff's assertion that the notice should have contained reasons for the amendment, cost considerations, and possible alternatives. The plain language of section 5—40 belies any such contention. Section 5—40 states that notice of rulemaking shall contain "[a] complete description of the subjects and issues involved." 5 ILCS 100/5—40(b)(3) (2000). "Description" is defined as "a statement of the properties of a thing or its relations to other things serving to identify it." Webster's Third New International Dictionary 610 (2002). While the things plaintiff argues should appear in the notice certainly are relevant to the wisdom of adopting a proposed rule, they simply do not serve to *describe* the issue. Given the plain language of the regulation, we cannot read into it the conditions that plaintiff advocates. *Petersen v. Wallach*, 198 Ill. 2d 439, 446 (2002) ("We are not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express").

The notice published by the IDPA was not confusing, and it adequately described the effect of the proposed amendment. We therefore reject plaintiff's argument regarding the alleged inadequacy of the notice. We now turn to plaintiff's contention that the IDPA engaged in what the plaintiff terms *fait accompli* rulemaking.

A claim that an agency had predetermined to adopt a rule prior to engaging in the rulemaking process is akin to a claim of bias. However, in assessing such a claim, it must be remembered that we are dealing

with a quasi-legislative, rather than a judicial, act. *Horsehead Resource Development Co. v. Pollution Control Board*, 291 Ill. App. 3d 948, 952 (1997). Accordingly, the due process standards that apply in a judicial proceeding do not apply to agency rulemaking. In fact, it is not surprising that an agency holds some position regarding a rule it seeks to adopt. *Cf. Association of National Advertisers, Inc. v. Federal Trade Comm'n*, 627 F.2d 1151, 1165 (D.C. Cir. 1979) ("No court to our knowledge has imposed procedural requirements upon a legislature before it may act. Indeed, any suggestion that congressmen may not prejudge factual and policy issues is fanciful"). Therefore, for plaintiff to succeed, she must show more than simple bias on the IDPA's behalf; she must show that the agency had an unalterably closed mind regarding the outcome of the rulemaking. *Cf. Association of National Advertisers, Inc.*, 627 F.2d at 1154 (considering the question of bias in the context of whether an individual agency member could participate in a quasi-legislative proceeding).

Plaintiff points to a number of facts and allegations that, she contends, if proven, would allow her to prevail at trial. Most significantly, plaintiff observes that defendant submitted an amendment to the state Medicaid plan to HHS on December 1, 2000, which stated that private duty nursing services were only available to those under the age of 21. On January 3, 2001, the IDPA withdrew that amendment and substituted another in its place that struck all reference to private duty nursing. It was this second amendment that formed the basis for the rulemaking at issue in the instant case. The amendment received federal approval on February 2, 2001.

Meanwhile, plaintiff was pursuing an action in the United States District Court for the Northern District of Illinois. Following the denial of a request for a preliminary injunction, plaintiff appealed to the United States Court of Appeals for the Seventh Circuit. During oral argument before the Seventh Circuit, defense counsel informed that court of the proposed amendment to the state plan. On February 21, 2001, defendant notified the Seventh Circuit that the amendment had been approved by HHS on February 2, 2001. The Seventh Circuit ordered the parties to file briefs concerning the effect of the amendment. Defendant contended, and plaintiff agreed, that the amendment mooted the federal action. *Radaszewski v. Patla*, No. 00—3929 (7th Cir. 2001) (unpublished order under Seventh Circuit Rule 53). The IDPA did not begin the rulemaking process through which it sought to eliminate the language pertaining to private duty nursing from section 140.435(b) of the Code until March 2001.

Construing these acts in the light most favorable to plaintiff, as we must following a motion to dismiss (*Brandt*, 204 Ill. 2d at 645), we

conclude that plaintiff is entitled to proceed beyond the motion-to-dismiss stage. The IDPA's reliance on the amendment to the state Medicaid plan that eliminated the language for private duty nursing to terminate the federal litigation between the parties evinces an intent to enact the amendment regardless of whatever transpired during the rulemaking process. Prior to March 2001 when notice was first published in the Illinois Register, the IDPA was already using the amendment to achieve the results it sought in federal court. This fact alone is sufficient for plaintiff to survive a motion to dismiss.

Plaintiff also relies on what she terms defendant's failure to respond to comments submitted by members of the public during the rulemaking process. See 5 ILCS 100/5—40 (West 2000). Plaintiff argues that the IDPA deemed many comments irrelevant that were actually pertinent to the issue of providing private duty nursing to individuals over 21 years of age. However, as we have already determined that the IDPA's reliance on the amendment submitted to HHS to secure dismissal of the federal action is a sufficient basis for the trier of fact to find in plaintiff's favor, we need not address this issue. Instead, we leave the adequacy of the IDPA's responses, including questions of relevance and weight should the matter proceed to trial, to the trial court.

### III. CONCLUSION

In light of the foregoing, we conclude that the trial court erred in dismissing plaintiff's cause. We therefore reverse the decision of the circuit court of Du Page County and remand this matter for further proceedings.

Reversed and remanded.

HUTCHINSON, P.J., and KAPALA, J., concur.

Supplemental Opinion Upon Denial of Rehearing

JUSTICE GROMETER delivered the opinion of the court:

We previously reversed a decision of the circuit court of Du Page County granting judgment on the pleadings in favor of defendant. Defendant has filed a petition for rehearing. For the reasons that follow, we deny the petition.

First, we note that defendant raises additional arguments in her petition that were not raised in her opening brief. Points not argued are waived and may not be urged on rehearing. 210 Ill. 2d R. 341(e)(7). Specifically, defendant contends that plaintiff waived the issue of bias

706

by failing to raise an objection at the original administrative rulemaking proceeding and that section 140.436 of the Illinois Administrative Code (89 Ill. Adm. Code § 140.436 (2000)) vests defendant with discretion to deny requests for funding for private duty nursing. Because these arguments were not advanced until now, we find them waived for the purpose of this action and we express no opinion upon them.

We further note that defendant's second argument is based in part on certain inferences she attempts to draw from the record. For example, defendant relies on plaintiff's "implied admission" that the amendment to the plan was valid. While such arguments might carry some force, they are inappropriate at this stage of the proceedings. In resolving a motion for judgment on the pleadings, the nonmovant is entitled to all reasonable inferences. *Mount Vernon Fire Insurance Co. v. Heaven's Little Hands Day Care*, 343 Ill. App. 3d 309, 314 (2003). The sole issue in this appeal was whether defendant was entitled to judgment on the pleadings; we simply concluded that she was not.

Accordingly, we deny defendant's petition for rehearing.

HUTCHINSON and KAPALA, JJ., concur.