573 So.2d 476 (1991)
Todd Evan KESSLER
v.
AMICA MUTUAL INSURANCE COMPANY.
No. 90-CC-1092.
Supreme Court of Louisiana.
January 22, 1991.
Christina H. Belew and Judith Perhay, Simon, Peragine, Smith & Redfearn, New Orleans, for Amica Mut. Ins. Co., defendant-applicant.
Richard J. Serpe and John R. Martzell, Martzell, Thomas & Bickford, New Orleans, for Todd Evan Kessler, plaintiff-respondent.
HALL, Justice.
After a near collision between his automobile and another vehicle at an intersection, plaintiff, Todd Kessler, was shot in the head by the driver of the other vehicle who left the scene and has never been identified. Plaintiff filed suit against his insurer, AMICA Mutual Insurance Company (AMICA), claiming uninsured motorist benefits and benefits under a "personal injury protection" (PIP) provision, which is New York's state "no-fault" coverage for actual economic loss, including medical benefits.[1] Defendant answered, denying uninsured motorist coverage and alleging payment of all claims made under the PIP coverage.
Plaintiff filed a motion for summary judgment, arguing that he is entitled to coverage as a matter of law. Defendant filed a cross-motion for summary judgment denying coverage under the UM provisions of the policy, and seeking a judgment that it had properly paid all claims made under the PIP provisions of the policy. The trial court granted plaintiff's motion for summary judgment and denied defendant's motion. On defendant's appeal, the court of *477 appeal affirmed the judgment of the trial court, with one judge dissenting, in an unpublished opinion noted at 559 So.2d 1010. Having granted defendant's writ application, 565 So.2d 929 (La.1990), we now reverse and render summary judgment in favor of the defendant.

FACTS
The facts of this case are not in dispute. Plaintiff, a Tulane law student at the time, was driving east bound on Zimple Street in New Orleans on November 19, 1987. At the intersection of Zimple and Adams Streets, another vehicle, proceeding south on Adams Street, ran a stop sign and entered the intersection. Plaintiff was forced to swerve and accelerate to avoid striking the vehicle. In the process of this maneuvering, or immediately thereafter, plaintiff blew his horn. Presumably in response to these events, the unidentified motorist fired a shot which entered plaintiff's car through the back window and struck plaintiff in the head. The motorist did not stop and has never been identified. It is uncontested that the vehicles did not collide, and that the shot was fired by the unidentified driver while driving his vehicle through the intersection.
Plaintiff filed a claim with his uninsured motorist carrier, AMICA. While AMICA denied coverage under the UM provisions of its policy, it paid the PIP benefits provided by the policy. Pursuant to an assignment of insurance benefits by which plaintiff assigned his no-fault insurance benefits to his health care providers for services rendered or to be rendered, AMICA paid all claims made for medical expenses directly to plaintiff's health care providers. To date, AMICA has paid $6,589.00 in medical expenses. These are the only PIP benefits plaintiff has claimed.

UNINSURED MOTORIST COVERAGE
The UM provisions of the AMICA policy which are in dispute in this litigation provide in pertinent part:
"A. We will pay damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
1. Sustained by an insured; and
2. Caused by an accident.
The owners' or operators' liability for these damages must arise out of the ownership, maintenance, or use of the uninsured motor vehicle....
"C. `Uninsured motor vehicle' means a land motor vehicle or trailer of any type: ...
3. Which is a hit and run vehicle whose operator or owner cannot be identified and which hits:
a. you or any family member;
b. a vehicle which you or any family member are occupying; or
c. your covered auto."
Thus, in order for plaintiff to be entitled to UM benefits under this policy, he must prove that three prerequisites have been met. First, plaintiff must prove that the damages which he is entitled to recover from the unindentified motorist were caused by an accident. Second, he must prove that the unidentified motorist's liability arose out of the ownership, maintenance or use of an uninsured motor vehicle. Finally, plaintiff must prove that the unidentified automobile was an uninsured motor vehicle. This third requirement would have to be proven in this case by showing that the vehicle was a hit-and-run vehicle whose owner or operator cannot be identified and which hit plaintiff or his covered automobile.
We note at the outset that if plaintiff has failed to establish one of these conditions of coverage, then he does not come within the coverage of the UM provisions of the policy. Because we hold that the plaintiff has failed to prove that the unidentified motorist's liability arose out of the ownership, maintenance, or use of the uninsured vehicle, we find it unnecessary to reach the issues of whether plaintiff's injuries were caused by an "accident" and whether the other vehicle was an uninsured vehicle under the hit-and-run provisions of the policy.
*478 This court in Carter v. City Parish Government, Etc., 423 So.2d 1080 (La. 1982), established the analysis to be used in determining whether an arising-out-of-use provision has been met. The policy in question here provides that the uninsured operator's liability must arise out of the use of the automobile. As we stated in Carter, this provision is designed to limit coverage to liability resulting from conduct of the insured which constitutes both a use of the vehicle and a legal cause of the injury. Thus, the courts are required to answer two separate questions:
(1) Was the conduct of the uninsured of which the plaintiff complains a legal cause of the injury?
(2) Was it a use of the automobile?
The conduct complained of by the plaintiff is the running of the stop sign and the subsequent shooting. However, this sequence of events consisted of two separate acts by the unidentified motorist. Plaintiff would have the court view the injury-causing conduct as one continuous, on-going incident flowing from the unidentified motorist's use of his vehicle. This approach breaks down, however, when the Carter two-step analysis is applied. In order to determine whether the conduct complained of was a legal cause of plaintiff's injury, it is necessary to define the duty which was breached by the offender and to determine whether the risk created by the breach is within the scope of the duty. Defining the duty breached in this case immediately discloses that there were separate, distinct duties violated. The running of the stop sign and the shooting were violations of two separate duties, and for that reason they must be treated as separate acts when applying the Carter analysis. Therefore, we will apply the test announced in Carter to each of these acts.
First, we address the running of the stop sign. Presumably, the shooting was in response to the near collision and probably because the plaintiff blew his horn at the other motorist. But for the motorist's conduct in running the stop sign, plaintiff probably never would have been shot. Therefore, it may be said that this conduct was a cause-in-fact of the plaintiff's injury.
We are next required to ascertain whether the act was a breach of a legal duty imposed to protect against the particular risk involved. LeBlanc v. State, 419 So.2d 853 (La.1982); Jones v. Robbins, 289 So.2d 104 (La.1974); Hill v. Lundin Assoc., Inc., 260 La. 542, 256 So.2d 620 (1972). The duty imposed upon the unidentified driver concerning his conduct in running the stop sign is found in LSA-R.S. 32:123(B). A motorist approaching an intersection marked with a stop sign has a duty to stop before entering the intersection. The uncontroverted evidence indicates that this duty was breached in this case by the unidentified motorist. This duty would include the risk that someone in another vehicle might suffer injuries from a collision with the offender. The duty might include some risks beyond the immediate injuries sustained in the collision, such as injury sustained in a rescue or escape attempt, as was the case in Carter, supra. However, the risk of someone suffering a gunshot wound inflicted by an irate driver was certainly not within the contemplation of the legislature in enacting LSA-R.S. 32:123(B). There is no ease of association between the duty and the risk.
The risk that an occupant of another car might suffer a gunshot wound is not within the scope of the duty to stop at a stop sign. Therefore, the conduct of the unidentified motorist in running the stop sign was not the legal cause of the plaintiff's injury. Thus, the first part of the Carter test has not been met, although the unidentified motorist's conduct in running the stop sign was clearly a use of the vehicle.
The other conduct complained of by the plaintiff is the shooting by the unidentified motorist. The injuries which plaintiff suffered were caused by a bullet striking his head just above his ear. But for the conduct of the other driver in shooting a gun at him or his vehicle, the plaintiff would not have suffered any injury. Therefore, this conduct was a cause-in-fact of the plaintiff's injury.
*479 The duty imposed upon an individual to refrain from shooting at someone or his vehicle is a legal duty imposed upon all individuals, not just automobile drivers, for the safety of society. The risk against which this duty is intended to protect is that one would be injured as a result of being shot. This is the very risk that resulted in plaintiff's injury in this case. The unidentified motorist breached his duty to refrain from shooting at another person or his vehicle. As a result of this breach, plaintiff suffered an injury of the type sought to be avoided by the imposition of the duty. Therefore, the risk of one in plaintiff's position being shot was within the scope of the duty imposed upon the motorist, and his conduct in shooting the plaintiff was a legal cause of the plaintiff's injury.
We must next determine whether this conduct, which was the legal cause of plaintiff's injury, was a use of the automobile. Carter v. City Parish Government, Etc., supra. In Carter, this second question was a fairly easy one to answer because the conduct of which the plaintiffs complained was the tortfeasor's negligent driving of his vehicle. That conduct was obviously a use of the automobile. It was noted in Carter, however, that if the insured's conduct of which plaintiff complains is not the actual operation of the vehicle, whether it constitutes use of the vehicle may be a much more difficult question than whether it was a legal cause of plaintiff's injury.
The only interpretation of "use" which would result in a finding that the conduct in this case was use of the vehicle is a holding that "use" may be interpreted to mean "while using." Such an interpretation would extend the meaning of the arising-out-of-use provision of the policy beyond the contemplation of the parties to the contract and would not comport with the common-sense interpretation mandated by Fertitta v. Palmer, 252 La. 336, 211 So.2d 282 (1968).
The conduct which was the legal cause of the plaintiff's injury was the unidentified motorist shooting a gun toward the plaintiff. A common-sense analysis reveals that this conduct was not a use of the vehicle despite the fact that the unidentified motorist may have been using the vehicle at the time. The duty that the unidentified motorist breached existed independently of his use of the automobile. The fact that he was in his vehicle at the time of the shooting was incidental to the breach of his duty not to shoot at the plaintiff. This breach did not require the use of the vehicle nor did it involve the use of the vehicle. See LeJeune v. Allstate Insurance Company, 365 So.2d 471 (La.1978); McKenzie, Automobile Liability InsuranceUse, 44 La. L.R. 365 (1983).
The unidentified motorist's conduct in running the stop sign was not a legal cause of the plaintiff's injury. Therefore, that conduct is insufficient to meet the two-part test of Carter. The conduct of the motorist in shooting a gun toward the plaintiff was the legal cause of plaintiff's injuries, but it was not a use of the vehicle. Therefore, that conduct, likewise, fails to meet the Carter test.
For the foregoing reasons, we hold that the policy provision requiring that the operator's liability arise out of the use of the vehicle has not been met in this case. Therefore, plaintiff is not entitled to coverage under the UM provisions of his insurance policy, and the rulings of the trial court and the court of appeal to the contrary are reversed.

PIP BENEFITS
Additionally, we hold that AMICA's payment of PIP benefits in the form of medical payments directly to plaintiff's health care providers was proper. Plaintiff does not claim that any additional amounts are now due under the PIP provisions; only that payment should have been made to him directly. Plaintiff executed an assignment of insurance benefits on November 19, 1987, in which he authorized the payment of his no-fault insurance benefits directly to his health care providers for services rendered. Such an assignment of insurance benefits is valid under LSA-R.S. *480 22:658 C(1), which provides in pertinent part:
"All claims brought by insureds, workers compensation claimants, or third parties against an insurer shall be paid by check or draft of the insurer to the order of the claimant to whom payment of the claim is due pursuant to the policy provisions, or his attorney, or upon direction of said claimant to one specified."
AMICA's assertions that it has paid all of the plaintiff's claims for PIP benefits are supported by the record and are uncontroverted. There is no genuine issue as to a material fact, and AMICA is entitled to a judgment as a matter of law dismissing plaintiff's suit for PIP benefits which have already been properly paid. LSA-C.C.P. Art. 966. Of course, the plaintiff is entitled to make additional claims for future PIP benefits as they may arise.

DECREE
The judgment of the court of appeal is reversed, and it is now ordered that a summary judgment be entered in favor of the defendant, AMICA Mutual Insurance Company, dismissing plaintiff's suit for uninsured motorist benefits and for PIP benefits claimed by plaintiff and paid by defendant. Plaintiff's right to claim additional PIP benefits is expressly reserved. All costs of these proceedings are assessed to the plaintiff.
REVERSED AND RENDERED.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissenting.
The majority errs in holding that the shooting of plaintiff Kessler by an unidentified motorist did not arise out of the use of an uninsured vehicle. While maneuvering to avoid striking that vehicle, which had run a stop sign, Kessler blew his horn and was shot by the other driver. The driver of the uninsured vehicle utilized that car in shooting Kessler. The majority's hypertechnical analysis violates Louisiana's public policy of interpreting liability insurance policies for the benefit of injured persons. LSA-R.S. 22:655.
The unknown driver used the automobile to reach the scene; he used it to run a stop sign, almost hitting plaintiff's car; he used it to fire the weapon; and he used it to flee. It would not be difficult to conclude, as have other courts, that the liability arose out of the use of a motor vehicle. See 12 Couch on Insurance § 45:64 (2d ed. 1981).
See Allstate Ins. Co. v. Gillespie, 455 So.2d 617 (Fla.App.1984). Pedestrian Gillespie, enraged at Stewart's driving, attacked Stewart, who retaliated by firing a gun. Because the phrase "arising out of the use of a motor vehicle" should be liberally construed to effect coverage, the Florida trial and appellate courts found sufficient nexus between the car and the injury to hold that Stewart's policy provided coverage for the accident.
In Fortune Ins. Co. v. Ferreiro, 458 So.2d 834 (Fla.App.1984), uninsured motorist coverage was available to a passenger in a truck shot by the unidentified driver of a car. Fortune followed Government Employees Insurance Company v. Novak, 453 So.2d 1116 (Fla.1984) where the Florida Supreme Court held that an insured who was shot after refusing to give an assailant a ride was entitled to uninsured motorist benefits because the nexus between the injury and the car was close enough for the injury to arise from use of the car.
State Farm Mut. Auto Ins. Co. v. Whitehead, 711 S.W.2d 198 (Mo.App.1986) involved the shooting of one car passenger by another en route to a police station. The Missouri court noted that the word "use" is a general term not limited to ordinary use of an automobile. Since the injury occurred because the vehicle was being used to transport a robbery suspect to a police station, it resulted from "use" of the automobile.
Georgia Farm Bureau Mut. Ins. Co. v. Burnett, 167 Ga.App. 480, 306 S.E.2d 734 (1983) held that whether injury to a car passenger from a shot by the insured driver *481 arose out of the vehicle's use was a jury question.
I respectfully dissent.
NOTES
[1] The policy is a New York state policy issued to the plaintiff while he was a resident of New York before coming to Louisiana, but with knowledge the covered automobile would be used in Louisiana. Defendant argued the applicability of New York law in the lower courts, but apparently has abandoned that position in this court.