579 So.2d 1102 (1991)
Cherry D. SLADE, Plaintiff-Appellant,
v.
ALTEX READY-MIX CONCRETE CORP., et al., Defendant-Appellee.
No. 22387-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1991.
*1103 A. Wayne Stewart & Associates by Thomas J. Frierson, Denham Springs, for plaintiff-appellant.
Brittain, Williams, McGlathery, Passman & Sylvester by Joe Payne Williams, Natchitoches, for defendant-appellee, Economy Fire & Cas. Co.
Before MARVIN, C.J., and HIGHTOWER and BROWN, JJ.
MARVIN, Chief Judge.
In this appeal of a summary judgment by the widow of a murder victim who was shot and robbed shortly after he exited his vehicle to aid the murderer who stood near his apparently disabled pickup that was on the shoulder of a rural highway, the sole issue is whether the murderer's apparently disabled pickup, which was used to lure a victim to come to his aid, was an uninsured vehicle covered by the UM provisions of the liability insurance policy on the victim's vehicle.
We affirm.
The policy stated that the uninsured motorist's liability for damages must result from the ownership, maintenance or use of the uninsured motor vehicle. On stipulated facts, the trial court granted summary judgment in favor of the insurer.
The widow insists that coverage exists because her damages "result from the [murderer's] use of the uninsured [pickup to lure her husband to his death]." We disagree. Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1982); Dupuy v. Gonday, 450 So.2d 1014, (La.App. 1st Cir.1984).
The UM policy language here (the damages must result from the use of the uninsured vehicle) produces the same result as UM policy language in other cases (the damages must arise out of the use of the uninsured vehicle). Kessler v. AMICA Mutual Ins. Co., 573 So.2d 476 (La.1991). The distinction in the language (result from vs. arise out of), insofar as UM coverage is concerned, is inconsequential and of no effect. Dupuy, supra.
As in Kessler and Carter, cited supra, we make two inquiries: Was the uninsured motorist's conduct of which plaintiff complains a legal cause of the injury or damage, and secondly, was the conduct that resulted in the injury a "use" of the uninsured vehicle? A duty-risk analysis determines the legal cause coverage question. 423 So.2d at p. 1087.
In Kessler, an uninsured motorist's conduct in running a stop sign in the face of Kessler's oncoming car was held not to be the legal cause of injury to Kessler who was immediately thereafter shot in the head by the uninsured motorist, even though both drivers were driving or using their respective vehicles when Kessler was shot. The court distinguished cause-in-fact from legal cause, as we emphasize and add bracketed comments, explaining:
The conduct which was the legal cause of the plaintiff's injury was the unidentified motorist shooting a gun toward the plaintiff. A common-sense analysis reveals *1104 that this conduct was not a use of the vehicle despite the fact that the unidentified motorist may have been using [actually operating] the [uninsured] vehicle at the time [he shot at the plaintiff. But for the uninsured motorist running the stop sign in front of plaintiff and thereafter becoming provoked at plaintiff's reaction to the uninsured motorist's conduct, the shooting would not have occurred. This is the classical cause-in-fact, but-for, test. The unidentified motorist's conduct, however, which inflicted the injury was his firing the gun at plaintiff. This was a breach of the duty not to shoot at another person.]
The duty that the unidentified motorist breached [not to fire a gun at the plaintiff] existed independently of his use of the automobile [and independently of his duty not to run a stop sign]. The fact that he was in his vehicle [and using it in the pure factual sense] at the time of the shooting was incidental to the breach of his duty not to shoot at the plaintiff. This breach [shooting at plaintiff] did not require the use of the vehicle nor did it involve the use of the vehicle. See LeJeune v. Allstate Insurance Company, 365 So.2d 471 (La.1978) ...
The unidentified motorist's conduct in running the stop sign was not a legal cause [association of the risk of being shot with the duty of another not to run the stop sign] of the plaintiff's injury. Therefore, that conduct is insufficient to meet the two-part test of Carter. The conduct of the motorist in shooting a gun toward the plaintiff was the legal cause of plaintiff's injuries, but it was not a use of the vehicle [contemplated by the policy provisions] ...
573 So.2d at p. 479.
The facts we have summarized were stipulated. We attach the stipulation as an unpublished addendum to this opinion.

CONCLUSION
The fact that the murderer intentionally stopped his pickup [illegally, if not disabled] on the shoulder of the rural road and made it appear to be disabled to lure an approaching motorist to stop and render aid and thereby become the victim of murder and robbery, does not distinguish this case from the conduct of the unidentified motorist in running the Kessler stop sign nor from the conduct in other cases such as Dupuy, cited supra. The duty that was breached by the murderer that legally caused plaintiff's damages [not to murder another] was independent of and incidental to the murderer's using the pickup in the murder-robbery scheme [illegally parking it, a cause-in-fact, but not legal cause within contemplation of the policy language under the two-part Carter test]. See Annotation: 15 ALR 4th 10.

DECREE
On the authority of Kessler, Carter, and Dupuy, cited supra, and other cases discussed in those cases, the summary judgment dismissing the widow's action, at her cost, is
AFFIRMED.
BROWN, J., concurs and assigns written reasons.
BROWN, Judge, concurring.
Under the stipulated facts an uninsured motorist intentionally used his vehicle as an instrument to facilitate the perpetration of a crime committed with a gun. The UM insurer of the victim's vehicle drafted the insurance contract and is responsible for any ambiguity. The clause "result from the use of a motor vehicle" is framed in such general comprehensive terms as to express an intent to effect wide coverage. Under Louisiana's public policy such terms should be construed liberally to broadly permit coverage. LSA-R.S. 22:655.
However, the real issue in this case is whether we are ready to extend UM coverage to protect this victim from this type of harm arising in this manner. Administratively, to impose such a duty would open the floodgates to unmanageable litigation. The use of an automobile as a getaway car would extend coverage to victims and witnesses of armed robbery and other crimes to include a situation such as Currera v. Loyd, 531 So.2d 544 (La.App. 5th Cir.1988) *1105 where the court rejected coverage to parents of a kidnap, rape and murder victim. Further, it is difficult for society to easily associate this type of harm with the use of an automobile.
For these reasons I concur.