JOHNSON, Justice.
hln this writ application, we are asked to determine whether Norell and Andrea Bernard (“Plaintiffs”), who were guest passengers in a vehicle owned and operated by Ann Bernard and insured by Imperial Fire & Casualty Insurance Company (“Imperial”), are entitled to uninsured/un-derinsured motorist (“UM”) coverage under the Imperial policy. For the reasons that follow, we hold that the Plaintiffs are liability insureds under the Imperial policy and therefore entitled to UM coverage. Thus, we affirm the rulings of the lower courts, denying Imperial’s motion for partial summary judgment.
FACTS AND PROCEDURAL HISTORY
In February of 2009, a vehicle driven by Antoine Ellis disregarded a stop sign and struck a vehicle owned and operated by Ann Bernard. Norell Bernard and Andrea Bernard were guest passengers in Ann Bernard’s vehicle at the time of the accident. Mr. Ellis was uninsured, and Ann, Norell and Andrea Bernard all filed suit against Imperial for UM coverage. While Imperial did not dispute its named insured, Ann Bernard, was entitled to UM coverage, it filed a Motion for Partial Summary Judgment as to Norell and Andrea Bernard’s claims on the basis that the guest ^passengers were not residents of Ann Bernard’s household, and therefore did not meet the definition of “insured person” under the terms of the insurance policy for UM coverage.[1] In opposition, Plaintiffs argued that as permissive guest passengers, they were “using” the vehicle and therefore “insureds” under the terms *998 of the liability section of the Imperial policy,[2] and thus statutorily entitled to UM coverage pursuant |3to La. R.S. 22:1295.[3]
After a hearing, the city court denied Imperial’s motion for summary judgment.[4] Imperial applied for supervisory writs from this ruling, but the court of appeal denied the writ, finding Plaintiffs were insureds under the liability section of the policy. The court observed that although the Imperial policy did not define the term “use,” the jurisprudence routinely found that a passenger can be “using” the vehicle. The court concluded: “Liberally construing the policy, we find it provides coverage to the guest passengers who were occupying the insured vehicle with the driver’s consent.”[5] Imperial subsequently filed a writ application in this Court. We granted the writ and remanded the case to the court of appeal for en banc consideration, instructing the court to reconcile its holding with its previous ruling in Knight v. Imperial Fire & Casualty.[6]
In Knight, guest passengers filed suit against Imperial seeking recovery of UM damages. Imperial moved for summary judgment, arguing guest passengers not residing in the driver’s household were not liability insureds, and therefore not 14covered under the UM provision. The city court denied Imperial’s motion. The Fourth Circuit granted Imperial’s writ, and granted Imperial’s motion for summary judgment, stating:
Both the liability portion and the uninsured motorist portion of the Imperial Policy present two distinct definitions of *999 “insured persons.” In this case, plaintiffs’ attempt to use the definition of “insured person” found in the liability portion of the policy is in error. Further, Imperial’s provision limiting coverage to “insured persons” under the uninsured motorist section of its policy is only extended to those who reside in the same household and are blood related; the plaintiffs do not meet this criteria. The district court erred in failing to grant Imperial’s partial summary judgment. A clear reading of the policy in conjunction with the law reveals that no genuine issues of material fact remain.
Knight v. Imperial Fire & Casualty, 10-1474 (La.App. 4 Cir. 1/7/11) (unpub.).
On remand of this case, the Fourth Circuit, en banc, denied Imperial’s writ in a split decision.[7] The majority opinion provided, in pertinent part:
Imperial contends that even assuming the guest passengers were using the vehicle, as this court found in the Bernard case, the definition of an “insured person” at issue contains an additional requirement that the “accident arise out of that person’s use.” Imperial contends that it cannot be concluded that the accident arose out of the guest passengers’ mere riding in the vehicle. In support of its position, Imperial cites the First Circuit’s recent decision in Batiste.[8]
The Batiste case involved the same factual scenario and policy provisions at issue in the Bernard and Knight cases. In the Batiste case, the First Circuit, with one judge dissenting, affirmed a judgment granting Imperial’s motion for summary judgment on the same coverage issue. The First Circuit reasoned that “[t]o find that plaintiffs were ‘using’ the vehicle simply because they were riding as guest passengers would require a strained interpretation inconsistent with the meaning of the word and beyond what could have been contemplated by the parties.” The court further reasoned that even assuming the passengers were using the vehicle, the accident did not arise out of their use. The court still further reasoned that the “use” provision is “designed to limit coverage to liability resulting from conduct of the insured which constitutes both | 5a use of the vehicle and a legal cause of the injury.” Based on this reason, the court held that the guest passengers who were riding in the insured vehicle did not legally cause or contribute to the accident, did not fall within the definition of “insured persons” for purposes of liability coverage, and thus are not entitled to UM/UIM coverage.
We are not bound by and decline to follow the Batiste case. The omnibus provisions in the liability portion of Imperial’s policy define an insured as “any person with respect to an accident arising out of that person’s [permissive] use of a covered vehicle.” As we stated in our prior writ disposition in the Bernard case, use includes riding as a passenger. But for the guest passengers’ permissive use of the covered vehicle — riding in the insured’s vehicle when the accident occurred — they would not have been injured. Liberally construing the policy language, we hold that the guest passengers fall within the definition of “insured persons” for purpose of liability coverage, and thus are entitled to UM/UIM coverage.
*1000 Discussing the policy considerations, we noted in a footnote in our prior writ disposition in the Bernard case that “a contrary holding would result in the anomaly of allowing the driver to recover, but the driver’s two innocent guest passengers to have no recourse.” We further noted that “[t]his anomalous result is inconsistent with the underlying purpose of mandatory uninsured motorist coverage.” * * * Based on the policy considerations, a liberal construction of Imperial’s policy, and the jurisprudence, we again deny Imperial’s writ application in the Bernard case and overrule en banc our contrary writ disposition in the Knight case, [footnotes and citations omitted]
Following the writ denial by the court of appeal, Imperial filed the instant writ application with this Court. Finding the court’s decision created a split in the circuits, we granted the writ application.[9]
DISCUSSION
The issue we must decide is whether the Plaintiffs are insureds under the Imperial Policy, such that they are entitled to UM coverage. It is undisputed that Plaintiffs are not “insureds” under Part C of the Imperial policy providing for Uninsured/Underinsured Motorist Coverage. As defined by the policy, a UM “insured” is the named insured, or a relative of the insured who lives in the same ^household as the named insured. The only named insured on the Imperial policy is Ann Bernard. While Plaintiffs are relatives of Ann Bernard, they are not residents of her household and thus do not qualify as UM insureds under the specific language of Part C of the policy.
Although Plaintiffs are not entitled to contractual UM coverage under Part C of the Imperial policy, this Court has previously held that if a plaintiff is insured under the auto liability coverage, he is entitled to UM coverage. See Filipski v. Imperial Fire & Casualty Ins. Co., 09-1013 (La.12/1/09), 25 So.3d 742, 745 (per curiam); Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, 196. In Howell v. Balboa Ins. Co., this Court explained:
UM coverage attaches to the person of the insured, not the vehicle, and that provision of UM coverage purporting to limit insured status to instances involving a relationship to an insured vehicle contravenes LSA-R.S. 22:1406(D). In other words, any person who enjoys the status of the insured under a Louisiana motor vehicle liability policy which includes uninsured/underin-sured motorist coverage enjoys coverage protection simply by reason of having sustained injuries by an uninsured/underinsured motorist.
564 So.2d 298, 301-02 (La.1990) (emphasis added). See also, La. R.S. 22:1295(l)(a)(I). Thus, Plaintiffs are entitled to UM coverage under the Imperial policy if we determine they are insureds under the policy for purposes of auto liability insurance coverage.
Plaintiffs are not named insureds under Part A of the Imperial policy providing for liability coverage. However, La. R.S. 32:900(B)(2) provides, in pertinent part:
Such owner’s policy of liability insurance:
Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured against loss from the liability imposed by law for damages arising out of the ownership, *1001 maintenance, or use of such motor vehicle or motor vehicles ... (emphasis added).
17Thus, La. R.S. 32:900(B)(2) mandates that motor vehicle liability policies cover permissive users. See also, Sensebe v. Canal Indemnity Co., 10-0703 (La.1/28/11), 58 So.3d 441, 447. The policy language which fulfills this requirement is known as the statutory omnibus clause. Id. (citing Simms v. Butler, 97-0416 (La.12/2/97), 702 So.2d 686, 688). The Imperial policy contains the statutory omnibus clause. That section of the Imperial policy defines an “insured person” as “any person with respect to an accident arising out of that person’s use of a covered vehicle with the express or implied permission of you.” (Emphasis added). We are tasked with determining whether the Plaintiffs are insureds under this definition.
Parties’ Contentions
Imperial asserts its motivation in limiting UM coverage is to preserve available funds for its named insured. Imperial argues that UM insurance is not a limitless pool of funds, but is finite based on the policy limits selected by the insured. If persons who are strangers to the household are allowed to draw from, and possibly deplete, the policy limits for UM, the insured has not received the protection she paid for. Further, after such persons have been allowed to deplete the UM benefits of the Imperial policy, these guest passengers would be entitled to pursue additional claims under their own coverage — an option not available to Imperial’s named insured who paid extra premiums for her own protection.
Imperial notes that a plaintiff has to be insured under the policy to be entitled to UM coverage. Imperial takes the position that Plaintiffs are not insureds under the liability portion of its policy and therefore have no statutory right to UM coverage under the policy. According to Imperial, to be an “insured person” under the liability portion of the policy, the accident must “arise out of’ that person’s use of the vehicle. Thus, even if the Plaintiffs were “using” the vehicle by riding as guest passengers, it | scannot be suggested that the accident arose out the guest passengers’ use of the vehicle because the accident would have occurred regardless of whether the Plaintiffs were sitting in the vehicle.
Imperial argues the court of appeal erred in its interpretation of the language by focusing on whether the Plaintiffs’ injuries were a result of the use, rather than whether the accident arose out of the use of the vehicle. According to Imperial, Batiste represents the correct interpretation of this language because the Batiste court took the actual definition of “insured person” from the liability portion of the policy and applied it to the facts. By contrast, the court of appeal in this case took the requirement that the accident arise out of the guest passengers’ use of the vehicle and effectively re-wrote the policy language to require only that the injury arise out of that use. Imperial also points out that the “arising out of’ language in its policy is statutorily mandated by La. R.S. 32:900, and this Court’s interpretation of the language will apply not only to the Imperial policy, but to all guest passengers under any insurance policy.
By contrast, Plaintiffs argue they are “insured persons” under the liability provision of Imperial’s policy. Plaintiffs argue that while the term “use” is not defined in the Imperial policy, it is clear that “use” of a vehicle is not limited to operating the vehicle and includes the act of a passenger riding in the vehicle. Prior to the Batiste decision, there was not a single published court decision which interpreted the particular policy language to exclude guest *1002 passengers from UM protection because they were occupying a covered vehicle. Plaintiffs argue Imperial is attempting to re-characterize its omnibus clause to restrict coverage by-requiring that a permissive guest passenger be an actual cause of the accident before he could be considered an “insured person” under the liability portion of the policy. Here, the ^occurrence of the Plaintiffs’ injuries is part and parcel of an accident.
Analysis
Appellate courts review a judgment granting or denying a motion for summary judgment de novo. Cutsinger v. Redfern, 08-2607 (La.5/22/09), 12 So.3d 945, 949 (citing Bonin v. Westport Ins. Corp., 05-0886 (La.5/17/06), 930 So.2d 906, 910). A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B); Cutsinger, 12 So.3d at 949. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2); Cutsinger, 12 So.3d at 949. Thus, we ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Cutsinger, 12 So.3d at 949 (citing Smith v. Our Lady of the Lake Hosp., 93-2512 (La.7/5/94), 639 So.2d 730, 750).
Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment. Id. (citing Bonin, 930 So.2d at 910). An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. Magnon, 739 So.2d at 196 (citing Louisiana Ins. Guar. Ass’n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759). An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Id. Absent a conflict with statutory provisions or public policy, |ininsurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. Id. If the policy wording at issue is clear and unambiguously expresses the parties’ intent, the insurance contract must be enforced as written. Id. at 197; La. C.C. art. 2046. When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation. Magnon, 739 So.2d at 197 (citing Louisiana Ins. Guar. Ass’n., 630 So.2d at 76,4). A court should only grant the motion for summary judgment when the facts are taken into account and it is clear that the provisions of the insurance policy do not afford coverage. Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc., 06-1827 (La.5/22/07), 958 So.2d 634, 638 (citing Reynolds v. Select, 93-1480 (La.4/11/94), 634 So.2d 1180, 1183).
Uninsured motorist coverage embodies a strong public policy, which is to provide full recovery for innocent automobile accident victims who suffer damages caused by a tortfeasor who has no coverage or is not adequately covered by liability insurance. Cutsinger, 12 So.3d at 949 (citing Duncan v. U.S.A.A. Ins. Co., 06-363 (La.11/29/06), 950 So.2d 544, 547). The underlying purpose of uninsured motorist coverage “is to promote and effectu *1003 ate complete reparation, no more or no less.” Id. (citing Hoefly v. Government Employees Ins. Co., 418 So.2d 575, 579 (La.1982)). To carry out the objective of providing reparation for persons injured through no fault of their own, the statute is liberally construed. Id. at 949-50 (citing Taylor v. Rowell, 98-2865 (La.5/18/99), 736 So.2d 812, 816; Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987)). Any exclusion in uninsured motorist coverage must be clear and unmistakable. Id. at 950 (citing Duncan, 950 So.2d at 547).
With these well-settled principles in mind, we move on to determine whether Plaintiffs are insureds under the terms of the Imperial policy.
lnFirst, we find that Plaintiffs’ act of riding as permissive guest passengers in Ann Bernard’s vehicle is considered a “use” of the vehicle within the terms of the policy. The jurisprudence has consistently found that “use” of a vehicle is not limited to “operation” of a vehicle. Louisiana circuit courts have previously found that an occupant of a vehicle is “using” the vehicle. See, e.g., Stunkard v. Langlinais, 97-1006 (La.App. 3 Cir. 2/4/98), 708 So.2d 1117; Cagle v. Playland Amusement Inc., 202 So.2d 396 (La.App. 4th Cir.1967); Garvey v. Great Atlantic & Pacific Tea Co., 125 So.2d 634 (La.App. 4th Cir.1961); Bolton v. North River Ins. Co., 102 So.2d 544 (La.App. 1st Cir.1958). This view is also widely supported by national jurisprudence. See 8 Couch on Insurance 3d, §§ 111.31, 119.37 (2011) (citing a multitude of national jurisprudence). “When ‘use’ is distinguished from ‘operation,’ it has been held that the former denotes the purpose for which the automobile was employed while the latter refers to its actual physical operation or manipulation of controls.” Id. at § 119.37. “The term ‘use’ is a broad catchall designed to include all uses of the vehicle not falling within the terms ‘ownership’ or ‘maintenance,’ and involves simply employment for the purposes of the user.” Id. Therefore, we hold the word “use” has a broader meaning than operation of the vehicle and generally includes any use of a vehicle related to its inherent purpose. The Plaintiffs, who were riding as guest passengers in the vehicle, were clearly using the vehicle in a manner related to the vehicle’s inherent purpose (i.e., as a means of transportation).
According to Imperial, the “arising out of’ language implies something more than use of the vehicle, and requires Plaintiffs take some action, or be an active force that results in the accident, in order to be covered under the liability section of its policy. Imperial suggests there is a distinction between “active” and “passive” use of a vehicle by a passenger. Imperial relies on Batiste, wherein the court found the |12accident did not arise out of the guest passenger’s use of the vehicle because the “use” provision is “designed to limit coverage to liability resulting from an accident of the insured which constitutes both use of the vehicle and a legal cause of the accident.” 68 So.3d at 677. We reject Imperial’s argument and the court’s holding in Batiste.
The Batiste decision appears to stem from a flawed application of this Court’s decisions in Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1982) and Kessler v. Arnica Mut. Ins. Co., 573 So.2d 476 (La.1991). In both of those cases, this Court stated that the “arising out of use” provision was designed to limit coverage to liability resulting from conduct of the insured which constitutes both a use of the vehicle and a legal cause of the injury. Carter, 423 So.2d at 1087; Kessler, 573 So.2d at 478. However, a review of those cases makes clear that this relied-upon statement cannot be taken out *1004 of context and applied literally to this case involving guest passengers. Carter and Kessler involved a determination of whether the actions of the person who caused the accident and injury constituted a legal cause of the plaintiffs injury and a use of the vehicle.
In Carter, the body of a child, who had been a guest passenger in her uncle’s vehicle, was found beneath a flooded underpass several hundred feet away from the partially submerged vehicle. It was determined that the passenger drowned after the operator of the vehicle drove the vehicle into water under a flooded underpass (ignoring traffic barricades). The parents of the passenger brought suit against the liability insurer of the vehicle, as well their own UM insurer. The trial court dismissed both suits, finding the child’s death did not arise out of the ownership, maintenance or use of the automobile, as required by the liability and UM coverage. The court reasoned the death did not arise out of the use of the vehicle because neither the 1 ^driver nor passenger were using the vehicle when they drowned. The court of appeal affirmed. However, this Court reversed. In considering the issue, this Court established the following analysis to determine whether the driver/tortfeasor’s liability arose out of the use of the vehicle:
The arising-out-of-use provision is designed to limit coverage to liability resulting from conduct of the insured which constitutes both a use of the vehicle and a legal cause of the injury. Accordingly, we believe that the limitation requires a court to answer two separate questions: (1) was the conduct of the insured of which the plaintiff complains a legal cause of the injury? (2) was it a use of the automobile?
Carter, 423 So.2d at 1087 (emphasis added). This Court concluded that the evidence indicated the driver’s combined acts of negligent vehicle operation were a cause in fact of the accident which led to the passenger’s death. Id. at 1084. Further, we determined that the driver breached legal duties in the operation of his vehicle which were imposed to protect against the risk which caused the passenger’s drowning, and thus was a legal cause of the death. Id. at 1086-87. And, since the conduct of which the plaintiffs complained was the defendant’s driving, we concluded it was obvious that this conduct also constituted a use of the vehicle. Id. at 1087.
In Kessler, the plaintiff was shot by an unidentified driver of another vehicle after a near collision and filed a UM claim against his own insurer. The insurance policy required, among other things, that the unidentified (uninsured) motorist’s liability arise out of the ownership, maintenance, or use of the uninsured vehicle. Citing to our test in Carter, we determined that the conduct of the unidentified/uninsured motorist in shooting a gun towards the plaintiff, while a legal cause of the plaintiffs injuries, was not a use of the vehicle. We reasoned:
A common-sense analysis reveals that this conduct was not a use of the vehicle despite the fact that the unidentified motorist may have been using the vehicle at the time ... The fact that he was in his vehicle at the time of the shooting was incidental to the breach of his duty not to shoot the plaintiffs. This breach did not require the use of the vehicle nor did luit involve the use of the vehicle.
Kessler, 573 So.2d at 479.
Neither Carter nor Kessler involved a determination of a guest passenger’s use of a vehicle. Unlike this case, the central issue in those cases was whether the incident sued upon arose out of the use of the vehicle by the tortfeasor/operator who caused the accident. It is clear that the Carter test is not properly used to deter *1005 mine the application of an “arising out of use” provision as it applies to a guest passenger’s use of the vehicle in which he is merely riding. The liability coverage of the Imperial policy is not triggered in this case because there is no person claiming the driver or passengers of the Imperial vehicle caused the accident. Thus, there is no reason for this Court to apply the Carter and Kessler test to the facts of this case.
Additionally, to create a situation where a guest passenger is essentially required to be a legal cause of the accident in order to establish entitlement to UM coverage is illogical. Once a guest passenger becomes a tortfeasor, he would not be afforded protection under the UM statute. See, e.g., Breaux v. GEICO, 869 So.2d 1335, 1338-39 (La.1979). Under Breaux and its progeny, one cannot be insured with respect to liability coverage and uninsured/underinsured with respect to UM coverage under the same insurance policy. See Lang v. Economy Fire & Casualty Co., 00-1634 (La.App. 3 Cir. 4/4/01), 783 So.2d 587, 589; Leboeufv. Lloyd’s of Louisiana, 572 So.2d 347, 350 (La.App. 1st Cir.1990).
As it applies to guest passengers, we consider the words “arising out of’ to be general and comprehensive terms which should be construed liberally to extend coverage broadly. We define “arising out of’ to mean “originating from,” “growing out of,” or “flowing from” the use. Thus, all that is required is an adequate nexus between the vehicle and the accident. Here, we can unquestionably say the aeci-dent |!/‘flowed from” and was connected to the Plaintiffs’ use of the vehicle. The accident occurred as a result of a collision between two vehicles while the Plaintiffs were riding as passengers in one of the vehicles, and thus demonstrates a sufficient nexus to meet this requirement. There is no requirement that the guest passengers be a legal cause of the accident. It is sufficient that the accident causing the injury is connected with the normal or expected use of a vehicle. After our review of the Imperial policy, the record, and relevant law, we find that Plaintiffs are liability insureds under the Imperial policy, and are thus entitled to UM coverage. Our holding is consistent with the object and public policy behind UM coverage, which is to provide full recovery for automobile accident victims when the tortfeasor is uninsured or not adequately insured by liability insurance. See Hoefly, 418 So.2d at 578.
CONCLUSION
For the above reasons, we find that Plaintiffs, as guest passengers, were using Ann Bernard’s vehicle. Further, based on the facts of this case, we find that the accident arose out of the Plaintiffs’ use of the vehicle. Thus, we hold that Plaintiffs are liability insureds under the Imperial policy, and therefore entitled to UM coverage under the policy. Imperial’s motion for partial summary judgment was properly denied.
DECREE
AFFIRMED AND REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS.
VICTORY, Justice, dissents for reasons assigned by Justice GUIDRY.
GUIDRY, Justice, dissents and assigns reasons.
CLARK, Justice, dissents for reasons assigned by Justice GUIDRY.

.Part C of the Imperial Policy provides, in pertinent part:
Uninsured/Underinsured Motorist Coverage
A. Subject to the Limits of Liability, if you pay a premium for Uninsured/Underinsured Motorist Bodily Injury Coverage, we will pay for damages, other than punitive or exemplary damages, which an insured person is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
1. sustained by an insured person;
2. caused by an accident; and
3.arising out of the ownership, maintenance, or use of an uninsured motor vehicle
Additional Definitions:
Insured person means:
1. you or a person residing in the same household as you, and related to you by blood, marriage, or adoption, including a ward, stepchild, or foster child; and
2. any person who is entitled to recover damages covered by this Part C because of bodily injury sustained by a person described in 1 above.

. Part A of the Imperial policy provides, in pertinent part:
Liability Coverage (Section B) of the Insuring Agreement
When used.in this Part A, "insured person” or "insured persons” means:
1. you or a relative with respect to an accident arising out of the ownership, maintenance, or use of a covered vehicle;
2. any person with respect to an accident arising out of that person's use of a covered vehicle with the express or implied permission of you;
3. you or a relative with respect to an accident arising out of the maintenance or use of a non-owned vehicle with the express or implied permission of the owner of the vehicle;
4. any Additional Interest Insured designated by you in your application or by a change request agreed to by us, with respect to liability for an accident arising out of the use of a covered vehicle or non-owned vehicle by a person described in 1, 2, or 3 above.

. La. R.S. 22:1295 provides in pertinent part: (l)(a)(I) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (l)(a)(ii) of this Section (emphasis added).

. The court initially granted Imperial’s motion for summary judgment. Plaintiffs filed a motion for new trial. The court granted the motion for new trial, and denied Imperial’s motion for summaiy judgment.

. Bernard v. Ellis, 10-1495 (La.App. 4 Cir. 1/25/1 l)(unpub.)

. Bernard v. Ellis, 11-0329 (La.3/31/11), 60 So.3d 1239.

. Bernard v. Ellis, 10-1495 (La.App. 4 Cir. 9/27/11), 76 So.3d 69.

. Batiste v. Dunn, 10-1812 (La.App. 1 Cir. 6/10/11), 68 So.3d 673, writ denied, 11-1498 (La.9/30/11), 71 So.3d 295.

. Bernard v. Ellis, 11-2377 (La.2/3/12), 80 So.3d 467.