STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-511

SHERRI ARCENEAUX, ET AL.

VERSUS

AMANDA ARCENEAUX, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20120982
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Billy Howard Ezell, Judges.

REVERSED AND REMANDED.

Cooks, J., concurs with reasons.

Patrick J. Briney
Hallie P. Coreil
Briney Foret Corry
Post Office Box 51367
Lafayette, LA 70505-1367
(337) 237-4070
COUNSEL FOR DEFENDANT/APPELLEE:
    Dorel Juvenile Group, Inc.

Richard J. Petre, Jr.
Onebane Law Firm
Post Office Box 3507
Lafayette, LA 70502-3507
(337) 237-2660
COUNSEL FOR DEFENDANT/APPELLEE:
    QBE Specialty Insurance Company

**John R. Shea**
**John Shea & Associates**
**1817 W. University Avenue**
**Lafayette, LA   70506**
**(337) 981-7432**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Amanda Arceneaux**

**John W. deGravelles**
**Scott H. Fruge**
**deGravelles, Palimintier, Holthaus & Fruge, LLP**
**618 Main Street**
**Baton Rouge, LA   70801-1910**
**(225) 344-3735**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Sherri Arceneaux**
**Paul Arceneaux**
**Devin Cox**
**Gage Arceneaux**

**William L. Goode**
**Michael S. O'Brien**
**The Goode Law Firm, A.P.L.C.**
**Post Office Drawer 3366**
**Lafayette, LA   70502-3366**
**(337) 234-0600**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Sherri Arceneaux**
**Paul Arceneaux**
**Devin Cox**
**Gage Arceneaux**

**AMY, Judge.**

Two children suffered injuries as a result of a fire in their mother's vehicle. Their grandparents, acting as tutor and undertutor, filed suit on their behalf against their mother, the friend whose home they were visiting, and various insurance companies, including the grandparents' uninsured/underinsured motorist carrier. The grandparents' insurer filed a motion for summary judgment, contending that there was no coverage under its policy for the incident at issue. The trial court granted the insurer's motion and dismissed the plaintiffs' claims against it. The plaintiffs appeal. For the following reasons, we reverse and remand for further proceedings consistent with this opinion.

## Factual and Procedural Background

According to the record, the plaintiffs, Sherri and Paul Arceneaux,[1] are the grandparents of Devin Cox and Gage Arceneaux. The plaintiffs allege that Gage and Devin's mother, Amanda Arceneaux, took the children to dinner at Kirk Fontenot's house. According to the petition, when they were leaving, Amanda buckled the children into their car seats and went back into the house to retrieve her belongings. While Amanda was doing so, Devin, who was three years old at the time, began playing with some matches that he found in Mr. Fontenot's house. The plaintiffs allege that Devin's car seat caught on fire and that Devin suffered third-degree burns as a result. Devin was somehow able to get out of the car seat and out of the car. However, two-year-old Gage was still in his car seat. Amanda exited the house to find Devin on the sidewalk crying and smoke coming from her vehicle. She and Mr. Fontenot managed to extract Gage from the vehicle.

_____

[1] Mrs. Arceneaux's name is also spelled as "Sherrie" in the record. We use the spelling contained in the petition.

However, Gage suffered burns to his face, head, hands, and arms. According to the record, an investigator with the Lafayette Fire Department later determined that the fire was caused by Devin's playing with matches.

Sherri and Paul were appointed as the tutor and undertutor of Gage and Devin. They filed suit against Amanda, Mr. Fontenot, Mr. Fontenot's homeowner's insurance company, the manufacturer of the car seats, and QBE Specialty Insurance Company. QBE is Sherri and Paul's uninsured/underinsured motorist insurance carrier. Sherri and Paul seek to recover under the QBE policy and assert that, because Devin and Gage were residents of their household at the time of the accident, they are "insureds" under the terms of QBE's policy.

QBE filed a motion for summary judgment, contending that its policy requires that "[t]he owner or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle"[,]" and that the damages in this case were not covered because they did not arise out of the "ownership, maintenance or use" of Amanda's vehicle.[2] Sherri and Paul argued that the damages arose out of the use of the vehicle, primarily because of the use of the car seats. The trial court granted QBE's motion and dismissed Sherri and Paul's claims against QBE.

Sherri and Paul appeal, asserting as error that: "[t]he trial court erred in granting Defendant's Motion for Summary Judgment on the issue of whether or not this accident arose out of 'the use of the vehicle.' There are genuine issues of material fact which warranted a denial of said motion."

---

[2] On several occasions in the record, QBE notes that it contests whether Devin and Gage are considered "insureds" under the policy. However, QBE asserts that its motion for summary judgment as limited to whether the damages arose out of the "ownership, maintenance or use" of Amanda's vehicle.

**Discussion**

*Motion for Summary Judgment*

Summary judgment is favored in Louisiana and "is designed to secure the just, speedy, and inexpensive determination of every action[.]" La.Code Civ.P. art. 966(A)(2). If the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law, the motion for summary judgment shall be granted. La.Code Civ.P. art. 966(B)(2).[3] For the purposes of summary judgment, a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Hines v. Garrett*, 04-806 (La. 6/25/04), 876 So.2d 764. There is no genuine issue if reasonable persons could only reach one conclusion. *Id.* If so, there is no need for trial and summary judgment is appropriate. *Id.*

Further, the burden of proof in motions for summary judgment is discussed in La.Code Civ.P. art. 966(C)(2), which states:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

A trial court's judgment granting or denying a motion for summary judgment is reviewed de novo. *Bernard v. Ellis*, 11-2377 (La. 7/2/12), 111 So.3d

---

[3] We note that La.Code Civ.P. art. 966 was amended by 2013 La. Acts 391, effective August 1, 2013.

995. In so doing, the appellate court should use the same standard as the trial court in determining whether summary judgment is appropriate—whether a genuine issue of material fact exists, and whether the mover is entitled to judgment as a matter of law.

The supreme court addressed the interpretation of uninsured/underinsured insurance policies in *Bernard*, 111 So.3d at 1002-03 (citations omitted), stating:

> Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment. An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. . . . . If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation. A court should only grant the motion for summary judgment when the facts are taken into account and it is clear that the provisions of the insurance policy do not afford coverage.
>
> Uninsured motorist coverage embodies a strong public policy, which is to provide full recovery for innocent automobile accident victims who suffer damages caused by a tortfeasor who has no coverage or is not adequately covered by liability insurance. The underlying purpose of uninsured motorist coverage "is to promote and effectuate complete reparation, no more or no less." To carry out the objective of providing reparation for persons injured through no fault of their own, the statute is liberally construed. Any exclusion in uninsured motorist coverage must be clear and unmistakable.

In *Carter v. City Parish Government of East Baton Rouge*, 423 So.2d 1080 (La.1982), the supreme court addressed "arising-out-of-use" provisions in insurance contracts. The supreme court held that, when determining whether a particular claim arises out of the use of an automobile for insurance purposes, the examining court must answer two questions: 1) whether the insured's complained-of conduct was a legal cause of the injury; and 2) whether it was a use of the

4

automobile. *Id.* These questions are to be answered separately, and the examining court is to avoid traditional proximate cause concepts and use a duty-risk analysis to decide the legal cause question. *Id.*

In *Carter*, 423 So.2d 1080, Mr. Davis, who was later found to have been intoxicated, drove into a flooded underpass. Both Mr. Davis and his minor niece drowned. The niece's parents filed suit against various entities, including the insurance carrier who issued both Mr. Davis' liability insurance and the parents' uninsured motorist insurance. The insurer argued that there was no coverage because the accident was not a result of the "ownership, maintenance or use" of Mr. Davis' automobile. *Id.* at 1083. However, the supreme court found that Mr. Davis' "combined acts of negligent vehicle operation were a cause in fact of the accident[.]" *Id.* at 1084. Further, the supreme court found that "since the conduct of which the plaintiffs complain was Davis' driving, it is obvious that this conduct also constituted a use of the automobile." *Id.* at 1087.

The supreme court revisited the test enunciated in *Carter* in *Kessler v. AMICA Mutual Insurance Company*, 573 So.2d 476 (La.1991). In *Kessler*, the plaintiff narrowly avoided an automobile accident after an unidentified motorist ran a stop sign. Apparently in response to the plaintiff honking at the offending motorist, the other motorist fired a shot at the plaintiff's vehicle, striking the plaintiff in the head. *Id.* The plaintiff later filed suit against his uninsured motorist carrier, seeking compensation under the policy. *Id.*

Ultimately, the supreme court found that there was no coverage under the policy. *Kessler*, 573 So.2d 476. The court observed that the complained-of conduct consisted of two separate acts—the running of the stop sign and the firing of the gun. *Id.* With regard to running the stop sign, the supreme court found that,

although it was a cause-in-fact of the plaintiff's injury, the "risk that an occupant of another car might suffer a gunshot wound is not within the scope of the duty to stop at a stop sign." *Id*. at 478. Thus, because it was not the legal cause of the plaintiff's injury, the offending motorist's actions in running the stop sign did not satisfy the first part of the *Carter* test. *Id*. Turning to the offending motorist's conduct in firing the gun, the supreme court found that this was the legal cause of the plaintiff's injury. *Id*. However, the conduct was not a "use" of the automobile. *Id*. In reaching that conclusion, the supreme court stated:

> The only interpretation of "use" which would result in a finding that the conduct in this case was use of the vehicle is a holding that "use" may be interpreted to mean "while using." Such an interpretation would extend the meaning of the arising-out-of-use provision of the policy beyond the contemplation of the parties to the contract and would not comport with the common-sense interpretation mandated by *Fertitta v. Palmer*, 252 La. 336, 211 So.2d 282 (1968).

*Id.* at 479.

Here, the plaintiffs have asserted various claims against the defendants. As relevant to QBE's motion for summary judgment, the plaintiffs' allegations against Amanda, the owner and driver of the vehicle, constitute a negligent supervision claim. The test enumerated in *Carter* requires the court to determine whether this complained-of conduct was a legal cause of the injury. It is well-settled that parents have a duty to supervise a child to prevent injury to the child and others. *Otwell v. State Farm Fire & Cas. Co.*, 40,142 (La.App. 2 Cir. 10/26/05), 914 So.2d 100; *Mahlum v. Baker*, 25,876 (La.App. 2 Cir. 6/24/94), 639 So.2d 820.

However, it is unnecessary for this court to resolve the legal cause question. Even assuming that Amanda's negligent supervision was the legal cause of the children's injuries, we find that a genuine issue of material fact exists concerning whether the complained-of conduct was a "use" of the automobile. We observe

that "[i]n order for conduct to constitute 'use' of an automobile, that conduct must be essential to the defendant's liability and the specific duty breached by the insured must flow from use of the automobile." *Edwards v. Horstman*, 96-1403, p. 7 (La. 2/25/97), 687 So.2d 1007, 1012. The record indicates that the complained-of conduct was that Amanda strapped the children into their car seats and then left them unattended. The plaintiffs allege that, during that time period, a fire started. Further, the plaintiffs claim that the children's car seats had insufficient flammability protection, which made them "a hazardous product for children capable of bursting into flames with as little as a match[.]" Given that the children were properly restrained in the vehicle and that their injuries allegedly arose, at least in part, because of that restraint, we conclude that there is a genuine issue of material fact regarding whether the injuries to the children flowed from the use of the vehicle.[4]

As we find that a genuine issue of material fact remains, we find that the trial court erred in granting the defendant's motion for summary judgment. Accordingly, we reverse the trial court's grant of the motion for summary judgment and remand for further proceedings consistent with this opinion.

**DECREE**

For the foregoing reasons, we reverse the trial court's judgment granting the motion for summary judgment and dismissing the plaintiffs' claims against the defendant, QBE Specialty Insurance Company. Further, we remand to the trial

---

[4] We note that, although using different standards than the standard articulated in *Carter* to determine whether these situations arose out of the "use" of a vehicle, in a situation where a caretaker leaves a child unattended in a hot vehicle, several courts have found that the injuries arose out of the use of the vehicle. *See Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857 (5th Cir. 2006); *Capitol Indemn. Corp. v. Braxton*, 24 Fed.Appx. 434 (6th Cir. 2001); *Prince v. United Nat'l Ins. Co.*, 142 Cal.App.4th 233 (2006); *Puckett v. Nationwide Fire Ins. Co.*, No. 2004-CA-000164, 2005 WL 626777 (Ky. Ct. App. 2005). *But see Mount Vernon Fire Ins. Co. v. Heaven's Little Hands Day Care*, 795 N.E.2d 1034 (Ill. App. Ct. 2003).

court for further proceedings consistent with this opinion. Costs of this appeal are assessed to the defendant, QBE Specialty Insurance Company.

**REVERSED AND REMANDED.**

SHERI ARCENEAUX, ET AL.

VERSUS

AMANDA ARCENEAUX, ET AL.

**COOKS, J., concurring.**

The children were strapped in seats designed for use in a car and affixed to the interior structure of the vehicle in question. Their presence in the car in the manner so described and required by Louisiana's Child Safety Law factually and legally sufficed to constitute use of the vehicle. Whether the mother's alleged failure to properly supervise the children during their use of the vehicle or while in the house at all times relevant, constituted a contributing and comparative factor in causing the ultimate harm they sustained is a factual issue genuinely disputed here.